UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                                 :    **7:08-md-01903 (CLB) (MDF)**

In re: PepsiCo, Inc., Bottled Water Sales and   :
Marketing Practices Litigation                :    **MDL No. 1903**

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X    **ECF FILING**

                                 :

This Document Relates to All Actions         :

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION .................................................................................... 1

ALLEGATIONS ..................................................................................... 4

PROCEDURAL HISTORY .......................................................................... 6

ARGUMENT ........................................................................................ 8

   I.   Standard of Review ......................................................................... 8

   II.   Federal Law Preempts Plaintiffs' State Law Claims ......................................... 9

      A. Plaintiffs' State Law Claims Are Expressly Preempted ................................... 9

         i.    The FDCA Standard of Identity for "Purified Water" Explicitly Exempts Products Meeting That Standard (Like *Aquafina*) from Having to Identify the Source of the Water ................................................................................ 10

         ii.   The FDCA Preempts State "Requirements" Including Common Law Duties That Are "Not Identical" to the FDCA Standard of Identity .......................................... 12

         iii.  Plaintiffs' Claims Here Are Preempted Because They Would Impose Requirements That Are Not Identical to the FDCA Requirements for Bottled Water .................. 15

   III.  PLAINTIFFS' CLAIMS ARE ALTERNATIVELY IMPLIEDLY PREEMPTED BY FEDERAL LAW ............................................................................... 18

   IV.  PLAINTIFFS HAVE NOT ADEQUATELY AND/OR PLAUSIBLY ALLEGED STATE LAW CAUSES OF ACTION ..................................................................... 21

      A. Plaintiffs Have Not Adequately Alleged Any Violations of Unfair and Deceptive Trade Practices Under State Law ...................................................................... 22

         i.    Plaintiffs' Have Not Adequately Alleged an Actionable Deceptive Act .................. 22

         ii.   Plaintiffs' Have Not Adequately Alleged Injury .................................... 28

         iii.  Plaintiffs' Claims Are Not Pled with Sufficient Particularity ....................... 32

         iv.  Plaintiffs Have Not Adequately Alleged Reliance on Defendants' Alleged Misrepresentations .......................................................................... 35

         v.   Plaintiffs' Claims Under the TCPA Must Fail Because Defendants' Actions Are Authorized by the FDA ...................................................................... 37

vi.    Plaintiffs Have Not Adequately Alleged Any Unconscionable Action or Course of Action Pursuant to the DTPA..................................................................37

vii.    Plaintiffs' UCL Claims Must Fail if Plaintiffs' Claims Fail Under the CLRA and Song-Beverly Act .................................................................................38

B. Plaintiffs Have Not Adequately Alleged Violations of the Song-Beverly Act ...............38

    i.    *Aquafina* Is Not a "Consumer Good" as Defined in the Song-Beverly Act ............39

    ii.    Plaintiffs' Claims Under the Song-Beverly Act Must Be Dismissed Because *Aquafina* Is Fit for Its Ordinary Use ....................................................................39

C. Plaintiffs Have Failed to Adequately Allege a Claim for Unjust Enrichment ................40

    i.    Plaintiffs Have Not Alleged a Valid Underlying Substantive Claim ......................41

    ii.    Plaintiffs Have Not Sufficiently Alleged They Have No Adequate Remedy at Law ..........................................................................................................................42

    iii.    Plaintiffs Have Not Adequately Alleged a Deceptive Act.......................................43

    iv.    Plaintiffs Have Not Adequately Alleged a Direct and Substantial Relationship with Defendants..............................................................................................................43

D. Plaintiffs Have Not Adequately Alleged the Statutory or Common Law Basis for Many of Their Claims..............................................................................................................45

CONCLUSION.........................................................................................................................46

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agfa Photo U.S. Corp. v. Parham,*
2007 U.S. Dist. LEXIS 40980 (E.D. Tenn. June 5, 2007).....................................................33

*Alan Neuman Prods., Inc. v. Albright,*
862 F.2d 1388 (9th Cir. 1988) ..............................................................................................34

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*,
2007 U.S. Dist. LEXIS 43508 (S.D.N.Y. June 13, 2007) ......................................................9

*Am. Suzuki Motor Corp. v. Superior Court,*
37 Cal. App. 4th 1291 (2d Dist. 1995) ..................................................................................40

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.,*
752 N.Y.S.2d 400 (2d Dep't 2002) ........................................................................................25

*Arnold v. ABC, Inc.*,
2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007) ..........................................................6

*Baron v. Pfizer, Inc.*,
840 N.Y.S.2d 445 (3d Dep't 2007) ...................................................................................29, 43

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) .....................................................................................................12-14, 18

*Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.,*
160 S.W.3d 874 (Tenn. Ct. App. 2004)..................................................................................41

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ...............................................................................................8-9, 21-22

*Bildstein v. MasterCard Int'l Inc.,*
329 F. Supp. 2d 410 (S.D.N.Y. 2004) ..............................................................................24, 28-29

*Busch v. Basic Organics, Inc.,*
2007 WL 603385 (N.D. Tex. Feb. 27, 2007)...................................................................43-44

*C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.,*
386 F.3d 263 (3d Cir. 2004) ..................................................................................................19

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ...............................................................................35-36

*Celtic Life Ins. Co. v. Coats,*
885 S.W.2d 96 (Tex. 1994) (Enoch, J., concurring) .............................................................36

iii

*Chavez v. Blue Sky Natural Bev. Co.*,
  503 F. Supp. 2d 1370 (N.D. Cal. 2007)...........................................................30-32

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) .....................................................................9, 13, 19

*City Nat'l Bank of Fla. v. Morgan Stanley DW, Inc.*,
  2007 WL 927428 (S.D.N.Y. Mar. 29, 2007) .............................................3

*Converse, Inc. v. Norwood Venture Corp.*,
  1997 WL 742534 (S.D.N.Y. Dec. 1, 1997) ................................................3

*Copeland v. Northwest Airline Corp.*,
  2005 WL 2365255 (W.D. Tenn., Feb. 28, 2005) ....................................45

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ..........................................................................6

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
  12 F. Supp. 2d 296 (S.D.N.Y. 1998)....................................................23, 25

*Depositors Ins. Co. v. Wal-Mart Stores, Inc.*,
  506 F.3d 1092 ...............................................................................................40

*Donahue v. Ferolito, Vultaggio & Sons*,
  786 N.Y.S.2d 153 (1st Dep't 2004) ..........................................................29

*El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*,
  1999 WL 354237 (N.D. Tex. May 27, 1999) ...........................................34

*Everett v. TK-Taito, L.L.C.*,
  178 S.W.3d 844 (Tex. App. 2005)..........................................................31-32

*Fed. Exp. Corp. v. U.S. Postal Serv.*,
  55 F. Supp. 2d 813 (W.D. Tenn. 1999) .....................................................24

*Fiess v. State Farm Lloyds*,
  2003 WL 21659408 (S.D. Tex. June 4, 2003), *rev'd on other grounds*, 392 F.3d 802
  (5th Cir. 2004)...........................................................................................37-38

*FMC Corp. v. Holliday*,
  498 U.S. 52 (1990) .......................................................................................12

*Fox v. Cheminova, Inc.*,
  387 F. Supp. 2d 160 (E.D.N.Y. 2005)........................................................19

*Fraker v. KFC Corp.*,
  2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 27, 2007) ....................20-21

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005) ........................................................................... 44

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................. 27

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ......................................................................................... 19

*Ganzevoort v. Russell*,
    949 S.W.2d 293 (Tenn. 1997) .......................................................................... 26

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (4th App. Dist. 2008) ................................................... 35

*Harvey v. Ford Motor Credit Co.*,
    1999 WL 486894 (Tenn. Ct. App. Jul. 13, 1999) ............................................ 36

*Harvey v. Ford Motor Credit Co.*,
    8 S.W.3d 273 (Tenn. Ct. App. 1999) ........................................................... 32-33

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ...................................................................................... 40

*Hill v. John Banks Buick, Inc.*,
    875 S.W.2d 667 (Tenn. Ct. App. 1994) ........................................................... 32

*Hoey v. Sony Electronics, Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................... 38

*Horton v. Cooper*,
    2002 WL 1285097 (Tex. App. June 12, 2002) ................................................. 36

*Humble Nat'l Bank v. DCV, Inc.*,
    933 S.W.2d 224 (Tex. App. 1996) ................................................................... 24

*In re Am. Express Co. S'holder Litig.*,
    39 F.3d 395 (2d Cir. 1994) .............................................................................. 25

*In re Dynamic Random Access Memory Antitrust Litig.*,
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ........................................................... 46

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ............................................................. 41

*In re Motel 6 Sec. Lit.*,
    1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. Apr. 2, 1997) .................................... 44

*In re Motel 6 Secs. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001) ..................................................................44

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   2008 WL 426522 (N.D. Cal. Feb. 14, 2008) ........................................................46

*Iqbal v. Hasty,*
   490 F.3d 143 (2d Cir. 2007) .................................................................................8

*Karam Prasad, LLC v. Cache, Inc.*,
   2007 U.S. Dist. LEXIS 63052 (S.D.N.Y. Aug. 27, 2007)......................................9

*Kramer v. Pollock-Krasner Found*,
   890 F. Supp. 250 (S.D.N.Y. 1995).................................................................41-42

*Kyger v. VeraVest Inv., Inc.*,
   2004 WL 1043111 (N.D. Tex. May 6, 2004) .......................................................26

*L.J.B. Corp. v. City of N.Y.*,
   581 N.Y.S.2d 798 (N.Y. App. Div. 1992) ...........................................................43

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
   326 F. Supp. 2d 434 (S.D.N.Y. 2004) .................................................................25

*Long v. Hewlett-Packard Co.*,
   2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007) ...............................27, 30

*MacDermid v. Discover Fin. Servs.*,
   488 F.3d 721 (6th Cir. 2007) ...............................................................................37

*Martin v. Home Depot U.S.A., Inc.*,
   369 F. Supp. 2d 887 (W.D. Tex. 2005) ...............................................................31

*Mazur v. Ebay Inc.*,
   2008 U.S. Dist. LEXIS 16561 (N.D. Cal. Mar. 3, 2008) .....................................33

*Mazzaro de Abreu v. Bank of Am. Corp.*,
   525 F. Supp. 2d 381 (S.D.N.Y. 2007) ...................................................................8

*McKee Foods Corp. v. Pitney Bowes, Inc.*,
   2007 U.S. Dist. LEXIS 20630 (E.D. Tenn. Mar. 22, 2007) .................................33

*McKinniss v. Kellogg USA*,
   2007 U.S. Dist. LEXIS 96106 .......................................................................27, 42

*McKinniss v. Sunny Delight Beverages Co.*,
   2007 WL 4766525 (C.D. Cal. 2007) ...............................................23, 27-28, 43

*McMullen v. Medtronic, Inc.*,
    421 F.3d 482 (7th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006) ........................................ 18

*Metro. Prop. & Cas. Ins. Co. v. Bell*,
    2005 U.S. App. LEXIS 17825 (6th Cir. Aug. 17, 2005) ........................................................ 32

*Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd on other*
    *grounds*, 508 F.3d 11 (D.C. Cir. 2007) ................................................................................ 14

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (4th Dist. 2003) ................................................................................ 39

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................................................ 12

*Naifeh v. Valley Forge Life Ins. Co.*,
    2005 WL 1073647 (Tenn. Ct. App. Dec. 05, 2005) .......................................................... 26, 37

*Novartis Corp. v. F.T.C.*,
    223 F.3d 783 (D.C. Cir. 2000) ............................................................................................ 24

*Oxford v. Williams Co.*,
    137 F. Supp. 2d 756 (E.D. Tex. 2001) .............................................................................. 41-42

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
    129 Fed. Appx. 955 (6th Cir. 2005), *aff'd in part*, 2007 Fed. Appx. 431N (6th Cir.
    2007) ................................................................................................................................... 26

*Patel v. Holiday Hospitality Franchising, Inc.*,
    172 F. Supp. 2d 821 (N.D. Tex. 2001) ................................................................................ 34

*Perry v. Am. Tobacco Co.*,
    324 F.3d 845 (6th Cir. 2003) .............................................................................................. 41

*Ramirez v. Am. Home Prod.*,
    2005 WL 2277518 (S.D. Tex. Sep. 16, 2005) ................................................................... 26, 34

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) ................................................................................ 43

*Redtail Leasing, Inc. v. Bellezza*,
    1997 U.S. Dist. LEXIS 14821 ............................................................................................ 44

*Riegel v. Medtronic, Inc.*,
    128 S. Ct. 999 (2008) .......................................................................................................... 13

*Samuels v. Old Kent Bank*,
    1997 WL 458434 (N.D. Ill. Aug. 01, 1997) ........................................................................ 25

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................................................... 34

*Siemens Medical Solutions USA, Inc. v. Sunrise Medical Tech., Inc.*,
    2005 WL 615747 (N.D. Tex. Mar. 16, 2005) ......................................... 26, 34-35

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) .............................................................................. 22, 28-30

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001) ...................................................................... 8

*Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*,
    1998 WL 476265 (N.D. Cal. Apr. 30, 1998) ........................................................ 42

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................... 27, 33-34, 36

*Strauss v. Ford Motor Co.*,
    439 F. Supp. 2d 680 (N.D. Tex. 2006) ........................................................... 37-38

*Stutman et al v. Chem. Bank*,
    690 N.Y.S.2d 8 (1st Dep't 1999) ............................................................................ 24

*Swift Freedom Aviation, LLC v. R.H. Aero*,
    2005 WL 2246256 (E.D. Tenn. Sep. 13, 2005) ..................................................... 31

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*,
    2008 WL 901584 (S.D. Tex. Mar. 31, 2008) ........................................................ 27

*Vigiletti v. Sears, Roebuck & Co.*,
    838 N.Y.S.2d 785 (2d Dep't 2007) ........................................................................ 28

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005), *cert. denied,* 127 S. Ct. 2093 (2007) ....................... 9

*Wayne v. BP Oil Supply Co.*,
    2006 WL 766712 (Cal. Ct. App. Mar. 27, 2006) ............................................ 44-45

*Weitzel v. Barnes*,
    691 S.W.2d 598 (Tex. 1985) (Gonzalez, J., dissenting) ....................................... 36

*Wilens v. TD Waterhouse Group, Inc.*,
    15 Cal. Rptr. 3d 271 (Cal. Ct. App. 2003) ...................................................... 35-36

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) ................................................................... 44

STATUTES

7 U.S.C. § 136v(b) ..........................................................................................12

21 U.S.C. § 301 *et seq.* ...................................................................................10

21 U.S.C. § 337.................................................................................................19

21 U.S.C. § 341.................................................................................................10

21 U.S.C. § 343-1 ......................................................................................Passim

21 U.S.C. § 343.................................................................................................11

21 U.S.C. § 360.................................................................................................13

28 U.S.C. § 1407.................................................................................................7

CAL. BUS. & PROF. CODE § 17200, *et seq.* .......................................................5

CAL. BUS. & PROF. LAW §§ 17204, 17535, *as amended by* Prop. 64, §§ 3, 5, *approved*
   Nov. 2, 2004, *eff.* Nov. 3, 2004.................................................................30

CAL. CIV. CODE §1770, *et seq.* ...............................................................1, 4, 22

CAL. CIV. CODE § 1790, *et seq.*......................................................................1, 22

CAL. CIV. CODE § 1791.1(a) ...........................................................................39

CAL. CIV. CODE § 1791(a) ..............................................................................39

N.Y. GEN BUS. LAW §§ 349, *et seq.*.....................................................1, 4, 22, 28

N.Y. GEN. BUS. LAW § 350 .............................................................................29

Nutrition Labeling & Education Act of 1990 ...............................................11, 12, 15

TENN. CODE ANN. §§ 47-18-101, *et seq.*.........................................................1, 4, 22

TENN. CODE ANN. § 47-18-109(a)(1)................................................................31

TENN. CODE ANN. § 47-18-111(a)(1) (2001)...................................................37

TEX. BUS. & COM. CODE ANN. § 17.45(5).......................................................37

TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) ..........................................31, 35, 37

TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.* ..............................................1, 4

**OTHER AUTHORITIES**

21 C.F.R. pts. 103, 129, 165, and 184 .................................................................................5, 20

21 C.F.R. § 100.1(c)(4)(i)-(ii) ..............................................................................................13

21 C.F.R. § 165.110 ...................................................................................... 2, 10, 16, 19

40 C.F.R. § 141.2 ...................................................................................................................10

Beverages: Bottled Water, 58 Fed. Reg. 393, 395 (Jan. 5, 1993) ..................................20

Beverages: Bottled Water, 60 Fed. Reg. 57,076 (Nov. 13, 1995) .......................Passim

136 CONG. REC. H. 5836 ....................................................................................................19

136 CONG. REC. H. 5843 ....................................................................................................19

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 8

Fed. R. Civ. P. 41 ..................................................................................................................7

Fed. R. Civ. P. 9(b) ............................................................................................ 32, 33, 34, 35

U.S. Const., art VI, cl. 2 ......................................................................................................9

Defendants PepsiCo, Inc. ("PepsiCo"), The Pepsi Bottling Group, Inc. ("PBG"), and

Pepsi Bottling Ventures LLC ("PBV") (collectively, "Defendants") respectfully submit this

Memorandum in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). Plaintiffs' claims against Defendants should be dismissed because: (a) they are all

expressly preempted by federal law, specifically, the express preemption provision of Section

403A of the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 343-1(a)(1); (b) they are

alternatively preempted because of the comprehensive nature of the federal regulation

concerning the standard of identity for bottled water; and/or (c) they do not adequately and

"plausibly" allege facts sufficient to sustain the various state law or common law claims,

including inadequate pleading of (i) unfair and deceptive trade practices under the state statutes

of New York (N.Y. GEN BUS. LAW §§ 349, *et seq.*), Tennessee (TENN. CODE ANN. §§ 47-18-101,

*et seq.*), Texas (TEX. BUS. & COM. CODE § 17.41, *et seq.*) and California (CAL. CIV. CODE §1770,

*et seq.*); (ii) an independent unjust enrichment claim; and (iii) a violation of the Song-Berverly

Act (CAL. CIV. CODE § 1790, *et seq.*).

## INTRODUCTION

This putative nationwide class action is brought by representatives of a purported class of

Plaintiffs who allege that they and all other members of the putative class were misled by the

alleged mislabeling of PepsiCo's *Aquafina* brand bottled purified drinking water. Plaintiffs

allege that "display[ing] a blue mountain range with the sun rising or setting over the mountain

range with the slogan immediately below it, 'Pure Water · Perfect Taste' and also stating on most

labels that it was 'BOTTLED AT THE SOURCE P.W.S.'" (Plaintiffs' Consolidated and

Amended Class Action Complaint, "Cmplt." ¶ 35.) somehow "create[d] the impression" that

*Aquafina* purified drinking water "came from a 'mountain source'". (Cmplt. ¶ 1). Plaintiffs

further allege that Defendants "failed to inform" the public that the actual source of *Aquafina*

purified drinking water was public tap water. (*Id.*). Plaintiffs claim that Defendants' actions violated various state and common law obligations. (Cmplt. ¶¶ 42-63). These claims, if successful, would require Defendants to disclose the source of *Aquafina* purified drinking water on the label of the bottle and would forbid PepsiCo from using certain terms and/or images.

The requirements sought by Plaintiffs are different from, and in addition to, FDA standard of identity regulations for bottled water, and also conflict with these regulations. These FDA regulations expressly permit the identification of water from a community water source (or any other water source) that undergoes certain purification processes (like *Aquafina* water) as "purified water" or "purified drinking water". *See* 21 C.F.R. § 165.110(a)(2)(iv) & (3)(ii). These regulations specifically state that there is no requirement to identify the source of "purified drinking water" because the source of "purified" water is not a material fact. Plaintiffs, therefore, are seeking to require Defendants to identify the source of their purified drinking water even though the FDA regulations specifically say Defendants are not required to do so.

These regulations also expressly prohibit claims imposing state requirements that "directly or indirectly establish . . . any requirement for a food which is the subject of a [federal] standard of identity . . . that is not identical to such standard of identity . . . ," unless the state first obtains an exemption from the FDA. 21 U.S.C. § 343-1. Federal law directly preempts the state law requirements Plaintiffs and their claims would impose. Even if not directly preempted, the comprehensive nature of the FDA bottled water standard of identity regulations and the FDA's interest in uniform standards for products covered by such standards of identity are sufficient to preempt the asserted claims, as they are inconsistent with this federal legislative scheme.

Wholly apart from the issue of preemption, it is clear that Plaintiffs have not adequately alleged the various causes of action.[1]  Plaintiffs do not plausibly allege any facts that could cause any reasonable consumer to believe that water clearly labeled as "purified drinking water" could be misconstrued as mountain spring water.  Plaintiffs in fact do not even allege that they themselves were misled by these advertisements.  The only purportedly misleading or deceptive acts alleged by Plaintiffs are statements such as "Pure Water · Perfect Taste", or "BOTTLED AT THE SOURCE P.W.S." or images of mountains and the sun on a label that also clearly stated that the product was "purified drinking water".  (Cmplt. ¶ 35).  Plaintiffs themselves explain in the Complaint that P.W.S. "actually stands for 'Public Water Supply'".  (*Id.*).  Plaintiffs do not and cannot explain how such a label could plausibly cause anyone to think that the water came from "a mountain source – a source more pure than 'tap water'."  (Cmplt. ¶ 36).

Plaintiffs also do not and cannot credibly allege why the source of water that undergoes a government-defined purification process is in any way relevant or material to a consumer purchasing such water.  This is particularly so here, where the FDA itself found that the source of "purified drinking water" is not a material fact in purchase decisions related to "purified drinking water", and the FDA also explained that "purified drinking water" is of a purer quality than other types of water, including spring water.

Plaintiffs have also failed to (a) adequately allege any cognizable injury Plaintiffs suffered as a result of the alleged misleading or deceptive acts, as required by each of the state

---

[1] Plaintiffs assert that the acts of Defendants "may be imputed to each other inasmuch as they acted as a joint-enterprise, co-venturers, agents, or co-conspirators of each other."  (Cmplt. ¶ 13).  While it is not clear what Plaintiffs are alleging or what role (if any) this allegation plays in any of the causes of action, this allegation is clearly insufficient to impute actions of one defendant to another.  *See, e.g., Converse, Inc. v. Norwood Venture Corp.*, 1997 WL 742534, at *4 (S.D.N.Y. Dec. 1, 1997) (dismissing allegation that some defendants acted as "agents", since "these allegations are wholly conclusory and are therefore insufficient"); *City Nat'l Bank of Fla. v. Morgan Stanley DW, Inc.*, 2007 WL 927428, at *4 (S.D.N.Y. Mar. 29, 2007) ("[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability").

consumer protection statutes on which Plaintiffs rely; (b) plead violations with the particularity required by many of the state statutes or to even plead that they relied on any alleged misrepresentations; (c) adequately allege unconscionable conduct under Texas Deceptive Trade Practices and Consumer Protect Act; and (d) adequately allege a violation of the Tennessee Consumer Protection Act by alleging conduct that was not otherwise permitted by the FDA. Plaintiffs have also not adequately alleged claims for unjust enrichment because (a) Plaintiffs have failed to specify under which laws such claims are brought; (b) these claims depend upon claims that themselves should be dismissed – namely, violating the unfair and deceptive trade practice statutes under state law and/or breaching an implied warranty under the Song-Beverly Consumer Warranty Act; (c) Plaintiffs do not adequately allege a deceptive act; and (d) Plaintiffs do not adequately allege a direct and substantial relationship between Plaintiffs and Defendants or explain why Plaintiffs did not try to bring claims against those with whom they had such a relationship.  Nor have Plaintiffs adequately alleged claims under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") because (a) Plaintiffs have not and cannot allege that *Aquafina* is a "consumer good" as defined in the Song-Beverly Act; and (b) Plaintiffs have not alleged that *Aquafina* is not fit for the ordinary purposes for which such goods (purified water) are used.  As a result, all of Plaintiffs' claims should therefore be dismissed.

## <u>ALLEGATIONS</u>

Plaintiffs use conclusory language to allege that Defendants' purported mislabeling of *Aquafina* constitutes an unfair and deceptive trade practice under various state laws, unjust enrichment, and a violation of the Song-Beverly Act (as to members of the Class residing in California).  Specifically, Plaintiffs allege that Defendants violated their common law duties, various state consumer protection statutes, such as N.Y. GBL §§ 349 *et seq.*, TENN CODE ANN. §§ 47-18-101, *et seq.*; TEX. BUS. & COM. CODE § 17.41, *et seq.*; CAL. CIV. CODE §1770, *et seq.*

4

and CAL. BUS. & PROF. CODE § 17200, *et seq.* and other, unspecified "similar statutes in effect in the other States and the District of Columbia", and the Song-Beverly Act, (Cmplt. ¶¶ 1, 51), because Defendants' label somehow falsely implied "that the origin of the water in *Aquafina* bottles was from a mountain source – a source more pure than 'tap water.'" (Cmplt. ¶ 36).

Plaintiffs claim that Defendants had an obligation under state law and/or the common law explicitly to disclose on its label for *Aquafina* that the source of *Aquafina* purified drinking water (before it undergoes its rigorous purification process) is a public water source, which is the same source as that used by "tap" water. (Cmplt. ¶¶ 35-36, 44-45, 54, 62). Plaintiffs claim that Defendants' failure to meet this obligation was inherently misleading and was somehow exacerbated by (a) displaying on the labels "a blue mountain range with the sun rising or setting over the mountain range"; (b) using the slogan "Pure Water · Perfect Taste"; and (c) "stating on most labels that [*Aquafina*] was 'BOTTLED AT THE SOURCE P.W.S.'" without indicating the meaning of "P.W.S." (even though Plaintiffs themselves claim it stands for "Public Water Supply"). (Cmplt. ¶ 35). Plaintiffs allege that Defendants misled consumers into believing that the water source of *Aquafina* water was something more pure than tap water. (Cmplt. ¶ 36).

Plaintiffs recognize that federal regulation governs the labeling of bottled water products like *Aquafina* purified drinking water, and do not allege that any exemption from these regulations was sought or obtained by the states of New York, Tennessee, Texas, California, or any other state. (Cmplt. ¶¶ 27-33). Plaintiffs further acknowledge in the Complaint that *Aquafina* claims to meet the regulatory definition of "purified water". (Cmplt. ¶ 28). Plaintiffs do not include in their allegations that "purified water" is subject to "stricter standards" than "other types of bottled water" because it "has been processed to be of a purer quality than other types of water." Beverages: Bottled Water, 60 Fed. Reg. 57,076, 57,088 (Nov. 13, 1995) (to be codified at 21 C.F.R. pts. 103, 129, 165, and 184). Plaintiffs do not allege that *Aquafina* purified

drinking water fails to meet these rigorous and overarching federal requirements for "purified drinking water", and as a result Plaintiffs do not and cannot allege that *Aquafina* purified drinking water is not pure. Plaintiffs also do not include in the Complaint the fact that PepsiCo clearly identified *Aquafina* to consumers as "purified drinking water" on every label used throughout the US during the relevant period pursuant to these FDA regulations.[2] Plaintiffs also do not allege that any specific plaintiff relied on any words or visual images on any *Aquafina* label at any point in time, and they do not allege that had PepsiCo more clearly labeled *Aquafina* as deriving from a public water source that this would have affected the price that Plaintiffs were charged for *Aquafina*. Plaintiffs nonetheless conclude that, had Defendants labeled *Aquafina* in a manner that identified the source of the purified drinking water, they "would not have purchased and/or paid the same amount for *Aquafina*". (Cmplt. ¶ 48).

## PROCEDURAL HISTORY

On July 30, 2007, the first putative nationwide consumer class action underlying this multidistrict litigation, captioned *Brian Fielman, individually and on behalf of all others similarly situated v. PepsiCo, Inc., The Pepsi Bottling Group, Inc., and Pepsi Bottling Ventures LLC*, 07 civ. 6815 (CLB), was filed in this Court. On July 31, 2007, a second putative consumer class action, captioned *Carmen Collado, on behalf of herself and all others similarly situated v. PepsiCo, Inc. and Pepsi Bottling Ventures, LLC*, 07 civ. 6874 (GBD), was brought in the

---

[2] The Complaint relies almost exclusively upon statements and graphics allegedly made on the *Aquafina* label. Defendants are attaching as Exhibit 1 a declaration of Diane Petrocionne made in support of this motion, which, among other things, introduces potential labels of which plaintiff may be complaining and clearly shows that these labels as well as all other relevant labels used during the relevant period contain the phrase "purified drinking water". This evidence is properly considered on a motion to dismiss as it is the very object which is referred to specifically by Plaintiffs in their Complaint. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("complaint is deemed to include . . . any statements or documents incorporated in it by reference"); *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802, *3 n.2 (S.D.N.Y. Jan. 29, 2007) (attaching copies of advertisement and website because documents were "integral to the complaint" and plaintiff relied on the material in crafting her allegations).

Southern District of New York against PepsiCo and PBV. This second action was originally docketed before Judge Daniels, but at PepsiCo's request, the case was granted related-case treatment and transferred to this Court. A third putative statewide class action, captioned *Stacy Anderson, et al. v. PepsiCo, Inc. and The Coca Cola Company, Inc.*, 2:07-cv-02514 (BBD), was filed in the Circuit Court for the Thirtieth Judicial District at Memphis, Shelby County on July 30, 2007 and timely removed to the United States District Court for the Western District of Tennessee where Plaintiffs filed an amended complaint on August 10, 2007. A fourth putative nationwide consumer class action was filed on August 2, 2007, in the District Court, 157 Judicial District of Harris County, Texas and was timely removed to the United States District Court of the Southern District of Texas. That case is captioned *Christina Villa, et al., v. PepsiCo., Inc. and The Coca Cola Company Inc.,* No. 07-cv-3060 (DH).[3] On October 5, 2007, a fifth putative class action, captioned *Amanda Litschke, on behalf of herself and all others similarly situated v. PepsiCo, Inc., The Pepsi Bottling Group, Inc., and Pepsi Bottling Ventures, LLC*, 07-cv-02100 (FCD-JFM), was filed in the United States District Court for the Eastern District of California.

On September 27, 2007, PepsiCo and PBG moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate these actions before this Court pursuant to 28 U.S.C. § 1407. All parties consented to both transfer and the venue. On October 11, 2007, PepsiCo and PBG filed a Notice of "Tag-Along" Action with the JPML requesting that the California action also be consolidated with the other four actions. On February 14, 2008, the JPML issued an order transferring the actions pending in Tennessee and Texas to this Court to be consolidated with the two New York actions. On February 28, 2008, the JPML issued another order transferring the

---

[3] With regard to the claims against The Coca-Cola Company, Inc., Plaintiffs in the Texas and Tennessee actions subsequently filed Notices of Voluntary Dismissals without Prejudice pursuant to Fed. R. Civ. P. 41.

"Tag-Along" action pending in California to this Court.  Plaintiffs filed their Consolidated

Complaint on May 8, 2008.

On April 14, 2008, the Court ordered that (a) Plaintiffs file a joint amended complaint by

May 7, 2008; (b) Defendants respond or file a motion to dismiss by June 16, 2008; (c) Plaintiffs

file any opposition to a motion to dismiss by July 16, 2008; and (d) Defendants file any reply by

August 7, 2008.  On May 8, 2008, Plaintiffs filed a consolidated and amended class action

complaint ("Complaint").  Defendants are hereby moving to dismiss all claims in the Complaint.

## ARGUMENT

## I.  STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must allege facts

that, accepted as true, make out the elements of a claim.  It is imperative that the complaint

contain either direct or inferential allegations respecting all the material elements necessary to

sustain a recovery under some viable legal theory."  *Sonds v. St. Barnabas Hosp. Corr. Health

Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) (citation omitted).  "Broad and conclusory

statements, coupled with a failure to allege the facts of the alleged offending conduct, are

insufficient to state a claim."  *Id.*  The Supreme Court recently held that the "plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.

Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  Instead, the allegations "must be enough to

raise a right to relief above the speculative level . . . ."  *Id.* at 1965.  In effect, a plaintiff is

required to plead enough facts to state a claim to relief that is "plausible" on its face.  *Id.*  While

*Twombly* was an antitrust action, Courts have understood that *Twombly* establishes the standard

for all civil actions.  *See, e.g., Iqbal v. Hasty,* 490 F.3d 143, 155-58 (2d Cir. 2007); *Mazzaro de

Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 386-87 (S.D.N.Y. 2007) (citing *Twombly* and

8

dismissing unjust enrichment claim); *Karam Prasad, LLC v. Cache, Inc.*, 2007 U.S. Dist. LEXIS

63052, at *3-6 (S.D.N.Y. Aug. 27, 2007) (dismissing plaintiff's deceptive trade practices claim);

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 2007 U.S. Dist. LEXIS 43508, at *6-13 (S.D.N.Y.

June 13, 2007) (citing *Twombly* and dismissing plaintiffs' breach of warranty, unjust enrichment,

and unfair competition causes of action).

## II. FEDERAL LAW PREEMPTS PLAINTIFFS' STATE LAW CLAIMS

Preemption generally occurs in one of three ways:  (a) "where Congress has expressly

preempted state law"; (b) "where Congress has legislated so comprehensively that federal law

occupies an entire field of regulation and leaves no room for state law"; or (c) "where federal law

conflicts with state law" or where "state law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress."  *Wachovia Bank, N.A. v. Burke,* 414

F.3d 305, 313-14 (2d Cir. 2005), *cert. denied,* 127 S. Ct. 2093 (2007).  The basis for preemption

is the Supremacy Clause of Article VI of the United States Constitution, which vests Congress

with the power to preempt state regulation.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504

(1992); U.S. Const., art. VI, cl. 2 ("[T]he laws of the United States . . . shall be the Supreme Law

of the land").  Congressional intent is critical to deciding whether a state law is preempted.

*Cipollone*, 505 U.S. at 516.

### A. Plaintiffs' State Law Claims Are Expressly Preempted

Plaintiffs' state law claims are expressly preempted by 21 U.S.C. § 343-1(a), which

explicitly preempts all state law claims that would impose requirements that are not identical to

the federal requirements governing the standard of identity for bottled water embodied in the

FDCA.  It is clear that labeling of a bottled water product like *Aquafina* is governed by the

FDCA regulation.  Plaintiffs through their state law claims here seek to require and/or forbid

descriptions, statements or images not otherwise required or forbidden by the FDCA.  Because

the state law requirements Plaintiffs seek to impose are not identical to the federal requirements imposed by the FDCA for the standard of identity for bottled water, they are preempted.

> **i.    The FDCA Standard of Identity for "Purified Water" Explicitly Exempts Products Meeting That Standard (Like *Aquafina*) from Having to Identify the Source of the Water**

The FDCA, 21 U.S.C. § 301 *et seq.*, provides that to "promote honesty and fair dealing in the interest of consumers . . ." the FDA may promulgate "regulations fixing and establishing for any food . . . a reasonable definition and standard of identity . . . ." 21 U.S.C. § 341. In 1995, the FDA adopted a standard of identity for bottled water which defines various kinds of bottled water, including "purified water," "artesian water," "ground water," "mineral water," and "spring water". 21 C.F.R. § 165.110(a). The statute does not permit use of the term "tap water" for identifying a kind of bottled water or a source of bottled water. *Id.* Subsection (a)(3) identifies other statements that may or may not be made on bottled water labels. Certain types of bottled water must be identified as coming from a "community water system" (i.e., like tap water) that is defined in 40 C.F.R. § 141.2 as "a public water system which serves at least 15 service connections used by year-round residents or regularly serves at least 25 year-round residents." This regulation is explicit that labels for "purified drinking water"[4] need not include this statement concerning the source of the water. 21 C.F.R. § 165.110(a)(3)(ii) (labels shall state "'from a community water system' or, alternatively, 'from a municipal source' as appropriate, on the principal display panel or panels" except for water that "**has been treated to meet the definitions in paragraphs (a)(2)(iv)[purified water] and (a)(2)(vii) of this section and is labeled as such** . . .") (emphasis added). During the rulemaking process, the FDA explained this

---

[4] "Purified water" or "purified drinking water" is defined as water that has "been produced by distillation, deionization, reverse osmosis, or other suitable processes" and requires that purified water "meet[] the definition of 'purified water' in the United States Pharmacopeia". 21 C.F.R. § 165.110(a)(2)(iv).

exemption, stating "[s]ource information for purified waters **is not a material fact** because the water may be significantly different in composition than other water from that particular source.'"  Beverages: Bottled Water, 60 Fed. Reg. at 57,103 (emphasis added).  The FDA also explained that "purified water" is held to "stricter standards than other types of bottled water because the term 'purified' asserts that the product has been processed to be **of a purer quality than other types of water**."  *Id.* at 57,088 (emphasis added).  "Thus, the absence of source information for purified water **is not misleading** under section 403(a) of the act."  *Id.* at 57,103 (emphasis added).

The FDA provides regulations to determine whether a food (including bottled water) has been misbranded.  Food shall be deemed misbranded if the labeling or advertising is false and misleading.  21 U.S.C. § 343(a).  The statute further proscribes that food for which there is a standard of identity is not misbranded if "(1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard . . . ."  21 U.S.C. § 343(g).  Thus, according to the FDA, bottled water like *Aquafina*, which complies with the FDA standard of identity, is not misbranded and cannot be false and misleading.

Following the FDA guidelines, PepsiCo identifies *Aquafina* as "purified drinking water" on the product label.  Plaintiffs have not alleged that *Aquafina* water does not meet the definition of "purified drinking water".  Because PepsiCo has identified *Aquafina* as "purified drinking water", the FDCA exempts PepsiCo from having to state the source of the water, because the source of purified water is not considered a material fact.  Additionally, because omitting source information for purified drinking water is in complete compliance with the FDA regulations for bottled water, the *Aquafina* label is not misleading under the Nutrition Labeling & Education Act of 1990 (the "NLEA").

### ii. The FDCA Preempts State "Requirements" Including Common Law Duties That Are "Not Identical" to the FDCA Standard of Identity

In 1990, Congress amended the FDCA by enacting the NLEA, which explicitly preempts state law requirements for food subject to a federal standard of identity (like bottled water) when those requirements are not identical to the federal standard of identity. Specifically, this statute provides that:

> no state or political subdivision of a state may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce (1) any requirement for a food which is the subject of a standard of identity established under section [341 of this title] that is not identical to such standard of identity . . . .

21 U.S.C. § 343-1(a). This preemption clause applies unless a state has petitioned the FDA for the right to exempt certain non-identical state and local requirements. 21 U.S.C. § 343-1(b). The Complaint nowhere alleges that any such exemption was sought or obtained, and the Court can take judicial notice of its absence.

The interpretation of any preemption provision begins "with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990)). The FDCA clause preempts any attempt by any state to establish or continue any "requirement for a food which is the subject of a standard of identity" that "is not identical" to the federal standard. 21 U.S.C. § 343-1(a).

In *Bates v. Dow Agrosciences LLC*, the Supreme Court considered the meaning of the term "requirement" in an express preemption provision in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). 544 U.S. 431 (2005). The FIFRA preemption clause provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). The Court

12

explained that the term "requirements" in preemption clauses like the one in FIFRA "reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Bates*, 544 U.S. at 443; *see also Cipollone,* 505 U.S. at 521-22 (1992) (holding that the term "requirement or prohibition" in a preemption clause included common-law duties and that "common-law damages actions . . . are premised on the existence of a legal duty . . . ."). As a result, the Court found that plaintiff's "fraud and negligent failure-to-warn claims" were preempted because they were "premised on common-law rules that qualify as 'requirements for labeling or packaging'" because the FIFRA rules "set a standard for a product's labeling". *Bates*, 544 U.S. at 446. In *Riegel v. Medtronic, Inc.*, the Court again found that an express preemption clause preempting state "requirements" also preempts common law duties and various tort claims. 128 S. Ct. 999, 1008 (2008).[5]

The FDCA preemption clause preempts state requirements that are "not identical" to federal requirements. The FDA itself explains that the term "not identical to" in the above provision means "that the State requirement **directly or indirectly imposes obligations** or contains provisions concerning the composition or labeling of food . . ." that are either "not imposed by or contained in the applicable provision . . ." or "[d]iffer from those specifically imposed by or contained in the applicable provision . . . ." 21 C.F.R. § 100.1(c)(4)(i)-(ii) (emphasis added). The Court in *Bates* considered a similar provision in that the FIFRA preemption clause was limited to state law requirements that are "in addition to or different from" the requirements of FIFRA. 544 U.S. at 446. As a result, the relevant state and common law claims were only preempted to the extent they would impose requirements on defendant that

---

[5] In that case, the Court was interpreting the preemption clause of the Medical Device Amendments of 1976 (MDA), 21 U.S.C. § 360(c) *et seq.*

were not identical to the standard of identity under FIFRA. *Id.* The Court explained that "a manufacturer should not be held liable under a state labeling requirement . . . unless the manufacturer is also liable for misbranding as defined by FIFRA." *Id.* at 454.

In *Mills v. Giant of Maryland, LLC*, the Court held that the interpretation of the terms "requirement" and "not identical to" from the *Bates* decision should also be used for the same language in the FDCA preemption clause, while at the same time recognizing that the FDCA's preemption clause is in other regards even broader than the FIFRA one. 441 F. Supp. 2d 104, 108 (D.D.C. 2006) ("The scope of FDCA's preemption clause is much broader than FIFRA's, prohibiting 'any' requirements as opposed to merely requirements 'for labeling or packing.'"), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007).[6] The Court in *Mills* determined that certain state law claims challenging the sufficiency of defendants' FDA-compliant labels for milk products were preempted by the FDCA express preemption provision. *Id.* at 106. The Court adopted the following two-prong test: "first, whether the duty imposed by the relief which Plaintiffs seek is 'a requirement for a food which is the subject of a standard of identity,' and second, whether this duty 'is identical' to the labeling requirements of the FDCA." *Id.* at 107. The Court concluded that because the claims asserted in *Mills* would require the defendants to add additional statements to the labeling and packaging for milk that were not required by the FDCA regulations, the duties underlying Plaintiffs' claims were not identical requirements to the standard of identity and therefore were expressly preempted. *Id.* at 109.

---

[6] The FDCA preemption clause is broader than the FIFRA preemption clause because, *inter alia*, it applies to all the requirements of the federal standard of identity and is not just limited to labeling and packaging (as FIFRA is), and it also preempts requirements that "directly or indirectly" impose different obligations. As a result, the FDCA preemption clause will preempt state law in more circumstances than the FIFRA preemption clause and should be interpreted more broadly.

### iii. Plaintiffs' Claims Here Are Preempted Because They Would Impose Requirements That Are Not Identical to the FDCA Requirements for Bottled Water

Plaintiffs' claims against Defendants in this action are clearly expressly preempted. The FDA explicitly intended the standard of identity for bottled water to preempt any state standards that were not identical to it; indeed, the FDA acknowledged that "some stringent State laws will be preempted by less restrictive Federal regulations." Beverages: Bottled Water, 60 Fed. Reg. at 57,120. The FDA explained that "Congress apparently decided that even though Federal requirements may preempt more restrictive State requirements in certain instances, the net benefits from national uniformity in these aspects outweigh the loss in consumer protection that may occur as a result." *Id.*

Here, Plaintiffs bring claims for violations of deceptive trade practice statutes, the Song-Beverly Act in California and unjust enrichment – claims which, if vindicated by this Court, would impose "requirements" on defendants and any similarly situated manufacturers of purified drinking water. These requirements are not identical to the federal standard of identity for purified drinking water.

Plaintiffs concede that *Aquafina* water is a product that is subject to a standard of identity. (Cmplt. ¶¶ 27-38). Accordingly, it is subject to very specific federal guidelines regarding, *inter alia*, the product's labeling and advertising. Following the FDA guidelines, PepsiCo identifies *Aquafina* as "purified drinking water" on the product label. Because PepsiCo has identified *Aquafina* as "purified drinking water", PepsiCo is exempt from having to state that the source of *Aquafina* is "from a community water supply" pursuant to the FDCA. Additionally, because omitting source information for purified drinking water is in complete compliance with the FDA regulations for bottled water, the *Aquafina* label is not misleading under the NLEA.

15

Plaintiffs, however, seek to impose precisely this requirement upon Defendants. Plaintiffs allege that Defendants have violated state law statutes and common law duties regarding bottled water by, among other things, not identifying the source of the water. (Cmplt. ¶¶ 42-63). Plaintiffs would therefore require Defendants to make such an identification to avoid violating state requirements. But, as explained *supra*, the FDA expressly considered whether to require companies that sell "purified water" to identify that the water comes "from a community water system" or "from a municipal water system" and rejected such a requirement for "purified water". 21 C.F.R. § 165.110(a)(3)(ii). The FDA considers it sufficient and not misleading to simply identify the water as "purified drinking water". In fact, the FDA explained that "the absence of source information for purified water is not misleading . . ." because "[s]ource information for purified waters is not a material fact . . . ." Beverages: Bottled Water, 60 Fed. Reg. at 57,103. The source of purified water is not material because the "water may be significantly different in composition than other matter from that particular source." *Id.* Plaintiffs therefore seek to impose requirements on Defendants which **exceed and conflict with** the requirements set by the FDA.

Similarly, Plaintiffs' allegations that Defendants misleadingly used the term "pure water" or "bottled at the source P.W.S." or graphics allegedly depicting a blue mountain range with the sun rising or setting over the mountain range are preempted for the same reason – these claims seek to impose requirements regarding identifying the source of water that exceed the federal standard of identity which do not forbid adding these terms or graphics to a description of "purified drinking water". The FDA has imposed branding and labeling regulations for bottled water regarding the source of water when a bottled water product claims to be "purified drinking water". In setting forth these regulations, the FDA did not enact regulations prohibiting the use of the term "pure" or "bottled at the source P.W.S." or the use of any kind of graphics.

16

In fact, in general, the FDA commentary clearly states that "there is no specific prohibition against the use of the term 'pure'" in any context. *Id.* at 57,099. As Plaintiffs note in their Complaint, the FDA does discuss a concern as to whether the term "pure" can be misleading (Cmplt. ¶¶ 33-34), but that discussion was specifically not discussing water that could be labeled as "purified". In fact, the main FDA concern was that consumers might erroneously mistake water labeled as "pure" with water that has been "purified". Beverages: Bottled Water, 60 Fed. Reg. at 57,099 ("[T]he agency notes that the term 'pure' may be confused with the term 'purified,' and consumers may be misled into believing that the bottled water labeled as 'pure' has been treated to substantially decrease the total dissolved solids content."). But there can no such confusion with water, like *Aquafina*, that in fact meets the United States Pharmacopeia definition of "purified water" and therefore is comparatively more pure than other water. *See id.* at 57,088 (noting that "purified water" is subject to "stricter standards" than "other types of bottled water" because it "has been processed to be of a **purer** quality than other types of water") (emphasis added). The FDA similarly declined to prohibit the use of any graphics on the labels of *any* bottled water. *Id.* at 57,103. Because the FDA does not prohibit the use of either the term "pure" or the use of graphics on a label for purified water, Plaintiffs' attempt to use the common law to construct those requirements would **exceed** the requirements set by the FDA and therefore is preempted by the FDCA under the same analysis described above.

Nor did the FDA prohibit adding any other advertising statements to the term "purified drinking water". In fact, the FDA stated that "manufacturers may optionally include source information on the label of purified water." *Id.* Plaintiffs allege that PepsiCo has opted to include some limited source information on its label, namely that *Aquafina* is "bottled at the source P.W.S." Plaintiffs allege that "P.W.S." means "Public Water Supply". (Cmplt. ¶ 35). Plaintiffs' claims if successful would impose a duty on Defendants to alter or remove the source

information they have chosen to provide and to replace it with information they are specifically exempted from having to provide.  This P.W.S. source statement, like the other statements and graphics, does not violate the FDA labeling requirements for optional source information.  Any action seeking to impose liability for using the term "pure water" or "bottled at the source P.W.S." or for including a picture of a blue mountain range and a sun *in addition* to identifying the product as "purified drinking water" is not identical to FDA requirements because such an action would impose additional requirements (forbidding additional unrelated pictures or additional true words) beyond those required by the FDA.

Accordingly, for each of the claims that Plaintiffs assert, Defendants could be held liable for violating state statutes and common law duties when their conduct was entirely compliant with FDA regulations which *inter alia* state that source information for purified drinking water is not a material fact and is not required to be disclosed.  This means the requirements which Plaintiffs seek to impose on Defendants are not identical to the federal regulations.  *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006) ("State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law.").  These claims therefore are preempted.  *See Bates*, 544 U.S. at 454 ("[A] manufacturer should not be held liable under a state labeling requirement . . . unless the manufacturer is also liable under [the federal requirement].").

### III. PLAINTIFFS' CLAIMS ARE ALTERNATIVELY IMPLIEDLY PREEMPTED BY FEDERAL LAW

As discussed *supra*, Plaintiffs' claims are expressly preempted because they seek to impose state common law duties upon Defendants which are not identical to the FDCA standard of identity for bottled water.  Assuming, *arguendo*, that Plaintiffs' claims are not expressly

18

preempted, they would be, in the alternative, impliedly preempted by federal statute. Implied preemption may exist even where Congress has included an express preemption clause in a statute. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-289 (1995) (holding that despite the language in *Cipollone v. Liggett Group Inc.*, "an express definition of the preemptive reach of a statute . . . does not mean that the express clause entirely forecloses any possibility of implied preemption"); *Fox v. Cheminova, Inc.*, 387 F. Supp. 2d 160, 168 (E.D.N.Y. 2005).

The general nature of the FDCA standards of identity, and specifically the standard for bottled water, are so comprehensive "that the application of state tort law would impede Congress's objectives." *See C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 270 (3d Cir. 2004) (concluding that plaintiff's tort claims were impliedly preempted by the comprehensive flood insurance program Congress established under NFIA). The comprehensive nature of the bottled water regulations is evident in the detailed nature of the prescriptions related to the permitted descriptions of bottled water, the various allowable nomenclature for eight different kinds of water, the regulations of other label statements and quality regulations. *See*, *e.g.*, 21 C.F.R. § 165.110. Moreover, the FDCA specifically prohibits private actions to enforce standards of identity and limits enforcement of its provisions to governmental agencies. 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."). Even states are prevented from asserting claims related to a standard of identity under the FDCA unless it first notifies the Secretary of the FDA and waits a specific period of time. 21 U.S.C. § 337(a).

One Congressional purpose in implementing the bottled water standard of identity was to provide a single uniform law for nutritional labeling. *See* 136 CONG. REC. H. 5836, 5843 ("This bill is fair to both consumers and industry in that it emphasizes disclosure of all valid and relevant information to the consumer, while providing the industry with uniformity of law in a

number of important areas that will permit them to conduct their business of food distribution in an efficient and cost-effective manner.").  Indeed, in proposing the standard of identity for bottled water, the FDA echoed this sentiment, stating that "[a] uniform Federal definition will ensure that consumers will be able to purchase bottled water products that are informatively and consistently labeled throughout the country."  Beverages: Bottled Water, 58 Fed. Reg. 393, 395 (Jan. 5, 1993) (to be codified at 21 C.F.R. pts. 103, 129, 165, and 184).  The goal of national uniformity was to "give industry some relief from some types of State requirements that interfere with their ability to market products in all 50 States in an effective and cost-effective manner." *Id*.  Another stated purpose for implementation of the bottled water standard of identity was to "promote honesty and fair dealing in the interest of consumers".  *Id*. at 394. The FDA regulations therefore carefully balance the goal of promoting uniformity with the goal of protecting consumers.  *Id*.

It is clear that if the goals are (a) to ensure national uniform standards in all 50 states; and (b) to promote honesty and fair dealing, then this regulatory scheme must preempt state laws and state requirements that themselves promote honesty and fair dealing in a way that is different from the manner promoted by these federal statutes.  Allowing each state to determine standards of honesty and fair dealing on their own would result in different requirements for labeling and advertising in every state.  *See, e.g., Fraker v. KFC Corp.,* 2007 U.S. Dist. LEXIS 32041, at *10-11 (S.D. Cal. Apr. 27, 2007) (finding that the FDCA preempts state law).  This scheme, paired with the stated goal of uniform national standards in the labeling of bottled water, mandates implied preemption of Plaintiffs' claims.  The same conclusion was reached in *Fraker,* where the Court held that plaintiff's claims regarding the branding and labeling of food products were impliedly preempted by the FDCA because "[t]o overlay the state law tort system over the

FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties." *Id.* at *10-11.

Here, Plaintiffs want to impose positive and negative requirements on Defendants' advertising and labeling under state law that are different than the requirements under the FDCA. This would frustrate the goals of Congress in passing the bottled water standard of identity, by among other things undermining the national uniformity sought by the FDCA, as each state would essentially have its own standard. As a result, these types of state law claims are impliedly preempted.

## IV. PLAINTIFFS HAVE NOT ADEQUATELY AND/OR PLAUSIBLY ALLEGED STATE LAW CAUSES OF ACTION

As noted *supra*, the Supreme Court has recently explained that to survive a motion to dismiss, a plaintiff has to allege more than just "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 127 S. Ct. at 1964-65. The allegations "must be enough to raise a right to relief above the speculative level" and these allegations must be "plausible" on the face of the complaint. *Id.* at 1965. In *Twombly,* the plaintiffs conclusorily alleged that the defendants entered into illegal "agreements" to "refrain from competing against one another," which plaintiffs claimed could be inferred from (a) defendants' common failure to pursue purportedly lucrative business activities; (b) statements by a CEO of one of the defendants; and (c) alleged parallel conduct by the defendants. The plaintiffs alleged specific facts and general conclusory statements. Notwithstanding the fact that plaintiffs' allegations "could very well signify illegal agreement", the Court nonetheless dismissed plaintiffs' claim of conspiracy for failure to state a claim, stating that plaintiffs "have not nudged their claims across the line from conceivable to plausible" because there was an

"obvious alternative explanation" for defendants' actions. *Id.* at 1972, 74. Plaintiffs here too have not adequately or "plausibly" alleged the various state causes of action as detailed below.

**A. Plaintiffs Have Not Adequately Alleged Any Violations of Unfair and Deceptive Trade Practices Under State Law**

Plaintiffs allege that "Defendants' actions . . . constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts in violation of state consumer protection statutes" (Cmplt. ¶ 51), including § 349 of New York's General Business Law ("GBL"); the Tennessee Consumer Protection Act ("TCPA"); the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"); and California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). These claims must be dismissed for the following reasons.

**i. Plaintiffs' Have Not Adequately Alleged an Actionable Deceptive Act**

Plaintiffs have not alleged a deceptive act that is actionable under any of the state consumer protection statutes. With respect to New York's statute, Plaintiffs have not adequately alleged an action or omission that is "deceptive or misleading in a material way" as is required by GBL §349. *See, e.g., Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 55 (1999). Plaintiffs conclusorily assert that three acts and/or one omission by Defendants were deceptive (Cmplt. ¶¶ 1, 35), but these actions and/or omission are neither actually nor "plausibly" deceptive on the face of the Complaint. Moreover, even if they were deceptive, they do not plausibly relate to a material fact in a reasonable consumer's decision to purchase purified drinking water.

Plaintiffs essentially allege that they thought water clearly labeled as "purified drinking water" came from a source which was "more pure" because of the alleged fact that Defendants (i) did not identify the source of the water other than by the initials "P.W.S."; (ii) called the water "pure water"; and (iii) included a picture of a mountain and a sun on the label. (Cmplt. ¶ 35). Plaintiffs ignore that the *Aquafina* label clearly identifies the bottled water as "purified drinking

22

water", which means that the water as currently constituted is purified, not that it comes from a pure source.[7]  *See* Beverages: Bottled Water, 60 Fed. Reg. at 57,089 (noting that "purified water" is chemically pure).  The purity of the water is related to the purification process – a strict process involving rigorous standards not applicable to other types of bottled water – and not its source.  The FDA has explained that "purified water" is subject to "stricter standards" than "other types of bottled water" because it "has been processed to be of a purer quality than other types of water."  *Id.* at 57,088.  Thus, the FDA did not require disclosure of the source of purified drinking water.  *Id.* at 57,103.  Therefore, there can be no misleading or deceptive act flowing from any omission of the source of purified drinking water.  Furthermore, in this context, the word "pure" on the label clearly refers to the water as sold, and not to its source.  Nor can the fact that the source is labeled as "P.W.S." plausibly indicate to any reasonable consumer that the bottled water product is more pure or comes from a mountain spring.  In fact, Plaintiffs themselves allege that "P.W.S. means "Public Water Supply".  (Cmplt. ¶ 35).

Finally, Plaintiffs have provided no plausible basis to think that in this instance the outline of mountains and a sun would lead any reasonable consumer to think that a product labeled as purified drinking water was mountain spring water.  There is no such indication on the label.  Mountains are a common feature on labels of many products that can indicate many things about a product including that the product itself is pure or cool or refreshing.  This is particularly true since the Court must consider "challenged statements read in their entirety and in context" in considering whether challenged statements are deceptive.  *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998); *see also McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *4 (C.D. Cal. 2007) (placing the alleged misrepresentation in the

---

[7] *See* Exhibit 1.

context "of the label as a whole" before determining whether it was misleading); *Fed. Exp. Corp. v. U.S. Postal Serv.*, 55 F. Supp. 2d 813, 818 (W.D. Tenn. 1999) (examining allegedly misleading representations not in a vacuum but in the context of which they were made); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 231 (Tex. App. 1996) (dismissing plaintiff's DTPA claims after first examining each of defendant's representations "in the context of its particular fact situation").

Even if these allegations sufficiently alleged a misleading or deceptive act or omission (which they do not), there is no reasonable basis to conclude that the source of purified drinking water is material to the decision to purchase such water. "[A] material claim is one that 'involves information that is important to consumers and, hence likely to affect their choice of, or conduct regarding a product.'" *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (*quoting Novartis Corp. v. F.T.C.,* 223 F.3d 783, 787 (D.C. Cir. 2000)). Plaintiffs do not explain why or how the source of purified water makes any difference in the quality or purity of water which has undergone an FDA mandated purification process – a process designed specifically to ensure that purified water "meets a stricter standard than other types of bottled water." Beverages: Bottled Water, 60 Fed. Reg. at 57,088. In fact, as noted *supra,* the FDA itself did not consider the source of purified water to be a "*material fact*" and as a result the FDA held that the omission of the source it not "misleading". *Id. at* 57,103 (emphasis added). In other words, even if the source of purified drinking water were a mountain spring, it would not be a material fact to a reasonable consumer simply because "purified water . . . has been processed to be of a purer quality than other types of water." *Id.* at 57,088.

"The burden is on Plaintiffs to show 'materially deceptive conduct' on which they relied to their detriment." *Bildstein,* 329 F. Supp. 2d at 414 (*quoting Stutman et al v. Chem. Bank,* 690 N.Y.S.2d 8 (1st Dep't 1999)). Plaintiffs have in this instance not met this burden. Instead, they

have simply alleged a legal conclusion that these alleged statements, images, or omissions are misleading or deceptive and that they are material.  The Court need not accept as true legal conclusions couched as factual allegations.  *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss.").  Courts instead evaluate whether the alleged conduct would be misleading to a reasonable consumer.  *See Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002).  In *Andre,* the Court affirmed the dismissal of plaintiffs' claims that Hewlett Packard misleadingly advertised that its printers contained a free ink cartridge when in fact the printers included only half-full ink cartridges.  752 N.Y.S.2d at 403.  The Court considered the entire printer box and determined that the advertisements were unlikely to mislead a reasonable consumer acting reasonably under the circumstances.  *Id.*  Other courts have consistently dismissed actions when the alleged deceptive or false actions were alleged in a conclusory manner or where the alleged activity complied with other statues or regulations.  *See, e.g., Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438-39 (S.D.N.Y. 2004) ("[C]onclusory allegations . . . are not sufficient to state a claim under [GBL] Section 349 in the absence of factual allegations . . . ."); *Cytyc Corp.*, 12 F. Supp. 2d at 301 (dismissing claims because statements that are "consistent with the substantive claims approved by the FDA" cannot be considered either false or misleading); *Samuels v. Old Kent Bank,* 1997 WL 458434 (N.D. Ill. Aug. 01, 1997) (dismissing Illinois Consumer Fraud and Deceptive Business Practices Act claims as there was nothing deceptive about cancelling a program when the cancellation was permitted by agreement).  This Court should reject any claim that Plaintiffs were deceived or misled by Defendants' true and correct statements which adhere with FDA regulations and are not plausibly misleading and certainly not misleading about a material fact.

25

Tennessee, Texas and California similarly require an adequate allegation of a deceptive act. The Tennessee Supreme Court has explained that a deceptive act or practice pursuant to the TCPA "is a material representation, practice or omission likely to mislead a reasonable consumer." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). Tennessee courts have consistently dismissed actions when the alleged deceptive or false actions were alleged in a conclusory manner or where the alleged activity complied with other statues or regulations. *See, e.g., Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 960-61 (6th Cir. 2005), *aff'd in part*, 2007 Fed. Appx. 431N (6th Cir. 2007) (dismissing TCPA claim because plaintiff did not explain "how it was misled or deceived" by the various specific acts alleged in the complaint); *Naifeh v. Valley Forge Life Ins. Co.*, 2005 WL 1073647, *13 (Tenn. Ct. App. 2005) (dismissing plaintiff's TCPA claims relating to the backdating of insurance policies because *inter alia* said backdating is expressly permitted under the laws of Tennessee).

Texas courts require adequate allegations of a "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" as is required by DTPA § 17.46(a). *See, e.g., Ramirez v. Am. Home Prod.*, 2005 WL 2277518, at *9 (S.D. Tex. Sep. 16, 2005) (stating that a proper DTPA claim requires allegations that "Defendant engaged in false, misleading, or deceptive acts"). Texas courts regularly dismiss actions with inadequate allegations of such conduct. *See, e.g., Siemens Medical Solutions USA, Inc. v. Sunrise Medical Tech., Inc.*, 2005 WL 615747, at *5 (N.D. Tex. Mar. 16, 2005) (dismissing plaintiff's DTPA claim because the alleged misleading statements "d[id] not have the capacity to deceive an ordinary, ignorant, unthinking, or credulous person"); *Kyger v. VeraVest Inv., Inc.*, 2004 WL 1043111, at *2 (N.D. Tex. May 6, 2004) (dismissing Plaintiffs' DTPA claims, stating that "Plaintiffs have not alleged any facts to show that [defendant] engaged in anything more than 'puffing.'"). The Texas Courts also dismiss actions where, as here, Plaintiffs simply plead legal conclusions couched as factual

allegations. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 2008 WL 901584, at *32 (S.D. Tex. Mar. 31, 2008) (holding for purposes of a motion to dismiss that "a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged").

Plaintiffs have also failed to meet the requirements to state a claim under California's UCL and CLRA, because they have not alleged that the statements or pictures appearing on Defendants' product labels are or were likely to deceive a "reasonable consumer". *See Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995*); Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262, *19-22 (N.D. Cal. July 27, 2007). Courts routinely dismiss complaints where the alleged misrepresentation would either not deceive a reasonable consumer or amounts to mere puffery. *McKinniss v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106, at * 8 (C.D. Cal. Sept. 19, 2007); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ("Advertisements that amount to 'mere' puffery are not actionable because no reasonable consumer relies on puffery."). Deception of a reasonable consumer must be probable, not just possible. *Kellogg,* 2007 U.S. Dist. LEXIS 96106 at *8-9.

In *Kellogg,* the court dismissed the Plaintiffs' claims under the UCL and CLRA based on the packaging of Defendants' *Froot Loops* cereal product. 2007 U.S. Dist. LEXIS 96106 at * 10-11. Plaintiffs alleged that the front panel of the cereal box misleadingly suggested that the cereal contained actual fruit because of (a) the word "Froot" in the name; (b) an image of brightly colored rings of cereal that resembled fruit; and (c) an image of illustrated fruit around a banner stating "Natural Fruit Flavors". The Court found that a reasonable consumer would not take these representations on the *Froot Loops* label to mean that the cereal contained real fruit, particularly in light of the fact that the word fruit did not appear on the box, and the ingredients – listed on the side of the box – did not include fruit. *Id.*; *see also*, *Sunny Delight*, 2007 WL

4766525 at *4 ("[N]o reasonable consumer, upon review of the label as a whole . . . would

conclude that Defendant's products contain significant quantities of fruit or fruit juice,

particularly when the label identifies the product as fruit "flavored" and indicates the exact fruit

content of each product.").  Similarly, no reasonable consumer, reading the *Aquafina* label as a

whole (which clearly identifies the water as "purified drinking water" and explains the

purification process employed on the back of the label), would conclude that the product is

mountain spring water because the "consumer can readily and accurately determine the

composition . . .  of a product" by reading the label.  *Sunny Delight*, 2007 WL 4766525 at *4.

### ii.  Plaintiffs' Have Not Adequately Alleged Injury

Plaintiffs' claims under state laws of unfair and deceptive trade practices should also be

dismissed for failure to adequately allege an actual injury.  Under New York Law, § 349 of the

GBL requires an allegation "that the defendant has engaged in an act or practice that is deceptive

or misleading in a material way and that plaintiff has been injured by reason thereof".  *Bildstein*

*v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004) (citing *Small*, 94 N.Y.2d at

55).  "It is well established . . . that the claimed deception cannot itself be the only injury".  *Id.*;

*see also Small*, 94 N.Y.2d at 55.  Without an allegation that Plaintiffs suffered an actual injury,

claims must be dismissed.  *Vigiletti v. Sears, Roebuck & Co.*, 838 N.Y.S.2d 785, 785 (2d Dep't

2007).

It is not sufficient to simply allege that the consumers would not have purchased the

product in question absent a manufacturer's alleged deception.  In *Small v. Lorillard Tobacco*

*Co.*, the Court rejected the theory that "consumers who buy a product that they would not have

purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury

under General Business Law § 349".  94 N.Y.2d 43, 56 (1999).  Finding this argument "legally

flawed", the Court found that the alleged deceptive act did not prevent Plaintiffs "from making

free and informed choices as consumers". *Id.* The Court noted that the Plaintiffs had not alleged

that the cost of the product "was affected by the alleged misrepresentation" and as a result the

Plaintiffs had not adequately alleged an actual injury. Other courts have rejected similar claims

where the deception was the injury. *See, e.g.*, *Bildstein*, 329 F. Supp. 2d at 415 (dismissing

Plaintiffs claim that credit card company charged an undisclosed transaction fee because the only

claimed injury was the payment of the fee itself); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448

(3d Dep't 2007) ("[P]laintiff's claim 'sets forth deception as both act and injury' and, thus,

'contains no manifestation of either pecuniary or actual harm'" and plaintiff failed to allege

injury such as price inflation or that the product was ineffective for its intended use).

In an analogous case, *Donahue v. Ferolito, Vultaggio & Sons*, the Court dismissed claims

of violations of GBL §§ 349 and 350, fraud, and breach of express and implied warranties

stemming from the labeling and marketing of five iced tea and fruit punch beverages. 786

N.Y.S.2d 153, 154-55 (1st Dep't 2004). Plaintiffs claimed that the marketing and labeling for

these products purportedly promised that consumption would improve memory, reduce stress

and improve overall health. *Id.* at 154. In affirming the dismissal of the claims, the court stated

that Plaintiffs never alleged injury, i.e. "that the cost of the beverages was inflated by these

misrepresentations or that their health was adversely affected by drinking the beverages. Thus,

they have impermissibly set up the deception as both act and injury, a theory specifically rejected

by our courts". *Id.*

Plaintiffs' allegations here fail for the same reasons, as they do not adequately or

plausibly identify any actual injury other than the alleged deceptive conduct by Defendants.

Plaintiffs claim that:

> [h]ad Defendants not engaged in the wrongful and deceptive
> conduct described above, Plaintiffs and member of the Class would
> not have purchased and/or paid the same amount for *Aquafina*, and

29

they have therefore proximately suffered injury in fact and
ascertainable losses.

(Cmplt. ¶ 48). Plaintiffs make no plausible and particular allegation that the alleged deception

caused an inflated price for *Aquafina*. Nor do Plaintiffs claim that the purified drinking water

was of lower quality due to its source, or that it was not pure. Nor do Plaintiffs allege that they

did not receive liquid refreshment from purified drinking water through their purchase of

*Aquafina*. As a result, Plaintiffs are seeking simply to recoup the purchase price for some or all

of their *Aquafina* purchases and are pleading the alleged deception as an injury. This is not

sufficient to plead an actual injury. *Small*, 94 N.Y.2d at 56-57.

Similarly, in California, to adequately state a claim under California's UCL or CLRA, a

plaintiff must allege that they have lost money or property as a result of the defendant's alleged

violation. CAL. BUS. & PROF. LAW §§ 17204, 17535, *as amended by* Prop. 64, §§ 3, 5, *approved*

Nov. 2, 2004, *eff.* Nov. 3, 2004; *see also Long*, 2007 U.S. Dist. LEXIS 79262 at *20 (noting a

claimant only has standing to sue under the UCL if it has "suffered an injury-in-fact and *lost*

*money or property as a result of the unfair competition*") (emphasis added). In *Chavez v. Blue*

*Sky Natural Bev. Co.*, 503 F. Supp. 2d 1370 (N.D. Cal. 2007), plaintiff claimed that defendant

Blue Sky Natural Beverages misrepresented on the labels of its beverages that they were

manufactured or bottled in New Mexico. *Id.* The label on each of defendant's products featured

the slogans "CANNED FOR THE BLUE SKY NATURAL BEVERAGE COMPANY SANTA

FE, NM 87501" or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL

BEVERAGE CO., SANTA FE, NM USA." *Id.* at 1371. Additionally, the cans had a

"'Southwestern look and feel' including 'stylized Southwestern Indian tribal bands' across the

top and bottom and 'pictures of what appear to be the Sangre de Cristo Mountains that border

Santa Fe, New Mexico on the eastern side of the city.'" *Id.* Plaintiff asserted that he would not

have purchased the Blue Sky Beverages had he known where they were really manufactured or where the company that owned and controlled Blue Sky Beverages was located. *Id.* at 1372. The district court dismissed plaintiff's claims under the CLRA and the UCL because it concluded that plaintiff suffered no injury or damage as a result of defendant's conduct. *Id.* at 1374. According to the court,

> Plaintiff did not pay a premium for Defendants' beverages because the drinks purportedly originated in Santa Fe, New Mexico. Accepting the facts as stated by Plaintiffs and drawing all inferences in their favor, Defendants' promise concerning geographic origin had no value and Plaintiffs have suffered no damages by purchasing beverages they thought were produced in New Mexico by a New Mexico-based company, but actually originated in California.

*Id.*

Texas and Tennessee have similarly required a pleading of an actual injury. In Texas, to adequately state a claim for misrepresentation under the DTPA, the plaintiff must show *inter alia* that the allegedly misleading or deceptive act was a "producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1); *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 890 (W.D. Tex. 2005) ("Texas law requires Plaintiffs to demonstrate 'actual injury' to pursue a claim", including claims under the DTPA); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 857 (Tex. App. 2005) ("[B]y statute, an 'injury' for purposes of standing to bring a DTPA suit occurs when deceptive acts are a producing cause of economic damages (or mental anguish damages) to a consumer."). Likewise, in Tennessee, the section of the TCPA creating a private right of action requires a showing by a plaintiff that the alleged violation caused his or her injury. TENN. CODE ANN. § 47-18-109(a)(1); *see also Swift Freedom Aviation, LLC v. R.H. Aero*, 2005 WL 2246256, at *16 (E.D. Tenn. Sep. 13, 2005) ("[E]very claim under the TCPA must include a showing of . . . injury.").

31

Here, Plaintiffs have not plausibly and adequately alleged actual damages. They do not claim that the alleged deceptive acts related to *Aquafina* caused any harm to Plaintiffs. Rather, Plaintiffs have in essence alleged that they were misled about the source of the purified drinking water they purchased. They have not alleged that *Aquafina* was not pure, did not perform as intended, or that any alleged deception caused higher prices. In short, Plaintiffs have plead deception as both the act and the injury, and can point to no actual damages whatsoever – economic or physical – that were produced by Defendants' alleged misrepresentations. As such, Plaintiffs have not sufficiently alleged any damages, and so have not stated a valid cause of action under any of the specified state statutes. *See, e.g., Chavez*, 503 F. Supp. 2d at 1374; *Everett*, 178 S.W.3d at 858 (dismissing DTPA allegations concerning allegedly false representations about seat belt buckles because Plaintiffs "received the benefit of their bargain; they were promised and they received seat belt buckles that latched and provided sufficient restraint."); *Hill v. John Banks Buick, Inc.*. 875 S.W.2d 667, 668 (Tenn. Ct. App. 1994) (dismissing plaintiff's TCPA claims where alleged misrepresentation was immaterial and did not cause injury to plaintiff). Accordingly, each of Plaintiffs' state claims alleging unfair and deceptive trade practices should be dismissed.

### iii. Plaintiffs' Claims Are Not Pled with Sufficient Particularity

Plaintiffs' deceptive act claims under Tennessee, Texas, and California law must also be dismissed because the allegations lack sufficient particularity. In Tennessee, claims for violations of the TCPA are subject to the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b). *See, e.g., Metro. Prop. & Cas. Ins. Co. v. Bell*, 2005 U.S. App. LEXIS 17825, at *16 (6th Cir. Aug. 17, 2005) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999)) (holding that claims under the TCPA are subject to Rule

9(b)'s specific pleading requirements).  FRCP 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

A TCPA claim must "set forth specific fraudulent or deceptive acts rather than general allegations."  *Agfa Photo U.S. Corp. v. Parham*, 2007 U.S. Dist. LEXIS 40980, at *31-32 (E.D. Tenn. June 5, 2007).  Failure to "specify the time and place of the Defendants' alleged TCPA violations" requires dismissal of Plaintiffs' claims.  *McKee Foods Corp. v. Pitney Bowes, Inc.*, 2007 U.S. Dist. LEXIS 20630, at *16 (E.D. Tenn. Mar. 22, 2007).

Plaintiffs' allegations here do not detail any specific alleged violations of the TCPA, nor do they specify the time and place of the alleged violations.  Nowhere in the Complaint do Plaintiffs specifically allege to have ever looked at, and been deceived by the allegedly misleading label, much less identify the time and location of when the alleged deception occurred.  This alone is grounds for dismissal.  *See Harvey*, 8 S.W.3d at 276 ("[P]laintiffs must at least allege that they were exposed to the offensive conduct."); *see also McKee Foods*, 2007 U.S. Dist. LEXIS 20630, at *16 (dismissing plaintiff's TCPA claims because the "[c]omplaint fail[ed] to specify the time and place of the Defendants' alleged TCPA violations").  If the Plaintiffs cannot allege when – if ever – they saw or read Defendants' allegedly deceptive statements or images on the *Aquafina* label, then they cannot possibly demonstrate "specific details" as to how each plaintiff was "individually harmed."  *See Agfa Photo*, 22007 U.S. Dist. LEXIS 40980, at *20.

Similarly, courts have found that CLRA, UCL and/or DTPA claims also require pleading with particularity, particularly where these claims involve allegations of fraudulent behavior.  *Mazur v. Ebay Inc.*, 2008 U.S. Dist. LEXIS 16561, *40-41 (N.D. Cal. Mar. 3, 2008) (dismissing plaintiff's CLRA and UCL fraud based claims for failure to plead with particularity); *Stickrath v. Globalstar*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (applying the requirement of particularity

to plaintiffs' UCL and CLRA claims, which centered around a "unified course of fraudulent

conduct", even though fraud was not an essential element of plaintiffs' claims); *Ramirez v. Am.

Home Products*, 2005 WL 2277518, at *10 (S.D. Tex. Sep. 16, 2005) ("Claims alleging

violations of the DTPA are subject to the requirements of Federal Rule of Civil Procedure

9(b)."); *Siemens Med. Solutions USA, Inc. v. Sunrise Med. Tech., Inc.*, 2005 WL 615747, at *5

(N.D. Tex. 2005) ("Defendants must plead its fraud-based DTPA [counter-]claims in accordance

with the particularity requirements of Rule 9(b)."); *Patel v. Holiday Hospitality Franchising,*

*Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the DTPA are

subject to the requirements of Rule 9(b)."); *El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*,

1999 WL 354237, at *2 (N.D. Tex. May 27, 1999) ("Rule 9(b) applies to these [DTPA]

claims.").

　　　　To meet the heightened pleading requirements under the DTPA, UCL or CLRA,

Plaintiffs must "state the time, place, and specific content of the [affirmative] false

representations as well as the identities of the parties to the misrepresentation." *Alan Neuman*

*Prods., Inc. v. Albright,* 862 F.2d 1388, 1392-93 (9th Cir. 1988) (citing *Schreiber Distrib. Co. v.*

*Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)); *Siemens*, 2005 WL 615747 at *5

(dismissing fraud-based DTPA claims because they failed to "allege who made such comments,

when they were made, to whom they were made, or, in the case of the allegedly false

advertisements, how they were made or how the content of the advertisements was false.").

Courts strictly interpret this requirement.  In one recent CLRA and UCL case, although plaintiffs

identified specific alleged misrepresentations from defendant's website, their claim failed under

Rule 9(b) because they failed to specify the time period in which the comments appeared.

*Stickrath*, 527 F. Supp. 2d at 998.

Plaintiffs here claim that Defendants' allegedly deceptive representations were actually "fraudulent representations". (Cmplt. ¶ 50). But, Plaintiffs have not added the level of detail necessary to sustain its claims. As described *supra,* Plaintiffs have only alleged general allegations of violations of the DTPA, UCL or CLRA, and not *when* Plaintiffs allegedly looked at and relied upon the purportedly misleading labels. Plaintiffs have not plead their claim with sufficient particularity to meet the requirements of Rule 9(b) and must be dismissed. *See, e.g.*, *Siemens*, 2005 WL 615747, at *5 (dismissing Defendants' DTPA counterclaims for insufficient particularity where Defendants did not allege *inter alia* when misleading statements were made or to whom they were made).

### iv. Plaintiffs Have Not Adequately Alleged Reliance on Defendants' Alleged Misrepresentations

Plaintiffs' claims under the DTPA, TCPA, CLRA, and UCL must also be dismissed because Plaintiffs have not pleaded that they either actually saw or read or relied in any way on Defendants' alleged misrepresentations or that Defendants' alleged misrepresentations proximately caused any damages.

Courts require plaintiffs asserting UCL claims to allege that they personally relied on the misleading advertisements in question. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (4th App. Dist. 2008) (rejecting plaintiffs claims for failure to plead causation or reliance and following similar decisions of California federal district courts). Indeed, the reliance element was a recent reform explicitly adopted by a ballot initiative, Proposition 64, in California. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) (noting that "omitting a 'reliance' requirement would blunt Proposition 64's intended reforms"). Similarly, with regard to Plaintiffs' claims under the DTPA, because Plaintiffs are alleging "a false, misleading, or deceptive act or practice" under Section 17.50(a)(1) of the DTPA, Plaintiffs must also prove "the

consumer relied on the defendant's wrongful conduct to the consumer's detriment." *Horton v. Cooper*, 2002 WL 1285097, at *3 (Tex. App. June 12, 2002) (dismissing DTPA claims).

Further, under the DTPA, TCPA, and CLRA, a defendant's conduct "must constitute a producing cause of [damages]". *Horton v. Cooper*, 2002 WL 1285097, at *3 (Tex. App. June 12, 2002); *see also Harvey v. Ford Motor Credit Co.*, 1999 WL 486894, at *2 (Tenn. Ct. App. Jul. 13, 1999) ("Although the [TCPA] does not require reliance, Plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury."); *Wilens v. TD Waterhouse Group, Inc.*, 15 Cal. Rptr. 3d 271, 276 (Cal. Ct. App. 2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.").

Because Plaintiffs have not alleged any reliance on Defendants' misrepresentations or that Defendants' alleged misrepresentations were a producing cause – or, put another way, a proximate cause – of Plaintiffs' injuries, Plaintiffs' DTPA, TCPA, UCL and CLRA claims must be dismissed. *See, e.g.*, *Weitzel v. Barnes*, 691 S.W.2d 598, 599-600 (Tex. 1985) (Gonzalez, J., dissenting); *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100-01 (Tex. 1994) (Enoch, J., concurring); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007) (dismissing plaintiff's UCL claim where she could not allege reliance or causation); *Wilens*, 15 Cal. Rptr. 3d at 276; *Stickrath*, 504 F. Supp. 2d at 998 ("Advertisements that amount to 'mere' puffery are not actionable because no reasonable consumer *relies on* puffery.") (emphasis added); *Harvey*, 1999 WL 486894 at *2-3 (dismissing plaintiff's complaint for failure to state a claim where the complaint did not allege a causal connection between defendant's conduct and any injury suffered by plaintiff because *inter alia* plaintiff did not allege that he saw, much less relied on, defendant's advertisements).

### v. Plaintiffs' Claims Under the TCPA Must Fail Because Defendants' Actions Are Authorized by the FDA

By its own terms, the TCPA does not apply to "acts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States." Tenn. Code Ann. § 47-18-111(a)(1) (2001). Therefore, Plaintiffs' TCPA claims must be dismissed because the allegedly deceptive act complained of – failure to identify the source of the water on the label – is expressly permitted by regulations promulgated by the FDA. *See Naifeh v. Valley Forge Life Ins. Co.*, 2005 WL 1073647, at *13 (Tenn. Ct. App. Dec 5, 2005) (affirming dismissal where allegedly deceptive act was expressly permitted by a state statute); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 733 (6th Cir. 2007) (affirming dismissal of TCPA claim as allegedly deceptive conduct was expressly permitted by state and federal law).

### vi. Plaintiffs Have Not Adequately Alleged Any Unconscionable Action or Course of Action Pursuant to the DTPA

Plaintiffs premise their DTPA claims (at least in part) on Defendants' "unconscionable . . . representations and material omissions to consumers . . . ." (Cmplt. ¶ 50). Under the DTPA, "a consumer may file suit where an 'unconscionable action or course of action' constitutes a 'producing cause' of economic damages." *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 687 (N.D. Tex. 2006) (quoting TEX. BUS. & COM. CODE ANN. § 17.50(a)(3)) (dismissing DTPA claim where plaintiff failed to allege conduct by defendants that rose to the level of unconscionability); *see also Fiess v. State Farm Lloyds*, 2003 WL 21659408, at *22 (S.D. Tex. June 4, 2003) (same), *rev'd on other grounds*, 392 F.3d 802 (5th Cir. 2004). An "unconscionable action or course of action" is specifically defined in the DTPA as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5); *see also*

37

*Strauss*, 439 F. Supp. 2d at 687. To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and that the resulting unfairness was "glaringly noticeable, flagrant, complete and unmitigated." *Strauss*, 439 F. Supp. 2d at 687; *Fiess*, 2003 WL 21659408 at *22. "It is not enough to allege that a defendant 'simply took unfair advantage' of the consumer." *Strauss*, 439 F. Supp. 2d at 687. "[P]roving unconscionability in a DTPA case is difficult." *Id.* Here, given the fact that, for the reasons discussed previously, Defendants' actions alleged in this case are in no way deceptive, they can hardly rise to the level of unfairness required to constitute an unconscionable action or course of action. As such, any allegations premised on Defendants' allegedly unconscionable representations and omissions must be dismissed.

### vii. Plaintiffs' UCL Claims Must Fail if Plaintiffs' Claims Fail Under the CLRA and Song-Beverly Act

To the extent that Plaintiffs base their UCL claim on Defendant's alleged violation of the CLA and the Song-Beverly Act and those claims are dismissed, for reasons discussed *supra*, Plaintiffs' claim for equitable remedies under the UCL must also be dismissed. *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007).

### B. Plaintiffs Have Not Adequately Alleged Violations of the Song-Beverly Act

Plaintiffs' allegation that "Defendants failed to comply with their obligations" to the California members of the Class "under the implied warranty of merchantability" pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), (Cmplt. ¶ 62), must be dismissed because (a) *Aquafina* is not a "consumer good" as defined in the Song-Beverly Act; and (b) *Aquafina* is fit for the ordinary purposes for which such goods (purified water) are used.

### i.  *Aquafina* Is Not a "Consumer Good" as Defined in the Song-Beverly Act

Plaintiffs' implied warranty claim must fail because *Aquafina* does not meet the definition of "consumer goods" set forth in the Song-Beverly Act.  "Consumer goods" are defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, **except for clothing and consumables**."  CAL. CIV. CODE § 1791(a) (2008) (emphasis added).  "Consumables" are defined as "any product that is intended for consumption by individuals, or used by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use."  *Id.* § 1791(d).  *Aquafina* is purified water intended for drinking, and therefore is a "consumable" and not a "consumer good" to which the Song-Beverly Act applies.

### ii.  Plaintiffs' Claims Under the Song-Beverly Act Must Be Dismissed Because *Aquafina* Is Fit for Its Ordinary Use

Plaintiffs' claim under the Song-Beverly Act also must be dismissed because *Aquafina* is fit for its intended and ordinary use.  According to the implied warranty of merchantability provisions of the Act, this warranty means that consumer goods meet each of the following:  (1) they pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged and labeled; and (4) they conform to the promises and affirmations of fact made on the product label.  CAL. CIV. CODE § 1791.1(a) (2007).  As one California court summarized, "a breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use".  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (4th Dist. 2003).  The implied warranty of merchantability "provides for a minimum level of

quality.'" *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1296 (2d Dist.
1995) (citations omitted).

Plaintiffs in their Complaint make no allegation that *Aquafina* is not fit for the ordinary
use for which purified drinking water is used.  Plaintiffs have not alleged that *Aquafina* is not
purified drinking water, that it caused them or others any ill effects, or that *Aquafina* was not fit
for its intended purpose as liquid refreshment.  Plaintiffs have not put forth facts to support an
allegation that *Aquafina* does not "pass without objection in the trade under the contract
description", or that *Aquafina* is not adequately "contained, packaged, and labeled."  Nor do
Plaintiffs allege that there were any promises or affirmations of fact on *Aquafina*'s labels; rather
they have alleged that the words "pure" and "P.W.S." and a picture of mountains and a sun on
the labels were misleading.  What Plaintiffs have alleged thus does not rise to the level of a
promise or affirmation, such as that in *Hauter v. Zogarts*, where the product at issue was labeled
with the promise, "Completely Safe Ball Will Not Hit Player."  14 Cal. 3d 104, 118 (1975).  In a
case involving an Iowa statute similar to the Song-Beverly Act, the Eighth Circuit noted that for
a breach of implied warranty of merchantability claim, a plaintiff must identify the specific
promise to which the good failed to conform.  *See Depositors Ins. Co. v. Wal-Mart Stores, Inc.*,
506 F.3d 1092, 1096 fn. 3 (8th Cir. 2007) (finding that plaintiffs' failure to identify the promise
to which the extension cord did not conform meant that their claim for breach of the implied
warranty of merchantability on that theory would not survive summary judgment).  For all of
these reasons, Plaintiffs' claim under a theory of implied warranty of merchantability should be
dismissed.

## C.  <u>Plaintiffs Have Failed to Adequately Allege a Claim for Unjust Enrichment</u>

As discussed *infra*, Plaintiffs' allegations of unjust enrichment must be dismissed because
it is impossible to tell from the face of the Complaint which States' common law supports their

40

claim.  Even assuming that Plaintiffs are asserting claims for unjust enrichment under the laws of

New York, Tennessee, Texas and California, Plaintiffs' claims must still be dismissed because

(a) Plaintiffs' unjust enrichment claim depends upon other claims that themselves should be

dismissed – namely, violating the unfair and deceptive trade practice statutes under state law

and/or breaching an implied warranty under the Song-Beverly Consumer Warranty Act; (b)

Plaintiffs do not adequately allege a deceptive act; and (c) Plaintiffs do not adequately allege a

direct and substantial relationship between Plaintiffs and Defendants.

### i.     Plaintiffs Have Not Alleged a Valid Underlying Substantive Claim

Under the laws of New York, Tennessee, Texas and California, Plaintiffs' unjust

enrichment claims are not independent claims but instead depend upon the claims of illegality

made in those other claims.  *See, e.g.*, *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d

953, 966-67 (N.D. Cal. 2007) ("Unjust enrichment is a general principle, underlying various

legal doctrines and remedies, rather than a remedy itself."); *Oxford v. Williams Co.*, 137 F. Supp.

2d 756, 762 (E.D. Tex. 2001) ("Unjust enrichment is not an independent cause of action but is

instead a measure of damages which places the aggrieved plaintiff in the position he occupied

prior to dealing with the defendant."); *Kramer v. Pollock-Krasner Found*, 890 F. Supp. 250, 257

(S.D.N.Y. 1995) (finding plaintiff's unjust enrichment claim dependent upon plaintiff's antitrust

claims); *Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*, 160 S.W.3d 874, 882 (Tenn.

Ct. App. 2004) (finding defendants' unjust enrichment counterclaim dependent upon defendants'

fraud allegation).  When an unjust enrichment claim hinges on practices claimed by the plaintiff

to be illegal and the allegations of illegality in the complaint fail, the unjust enrichment claim

must also be dismissed.  *See, e.g.*, *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003)

(affirming the district court's dismissal of Plaintiffs' unjust enrichment claims after Plaintiffs'

RICO claims and statutory claims under the Tennessee Consumer Protection Act and Trade

Practices Act were also dismissed); *Kellogg*, 2007 U.S. Dist. LEXIS 96106 at *16-17 (C.D. Cal. Sep. 19, 2007) (dismissing unjust enrichment claim after first dismissing Plaintiffs' other claims, including statutory California False Advertising Law claims, because "[i]n the absence of an underlying substantive claim, Plaintiffs' 'claim' for unjust enrichment fails . . . "); *Oxford*, 137 F. Supp. 2d at 762 (dismissing unjust enrichment claim where there is no underlying claim to support liability); *Kramer*, 890 F. Supp. at 257 (dismissing unjust enrichment claim because of dismissal of antitrust claims upon which unjust enrichment claim was based). Here, Plaintiffs assert that the "unjust benefits were conferred on Defendants by consumers as a direct result of the omissions and mislabeling made by Defendants" and thus Plaintiffs have made this cause of action hinge on their other causes of action. (Cmplt. ¶ 55). As a result, Plaintiffs' claim for unjust enrichment must necessarily be dismissed if Plaintiffs' other actions are dismissed.

### ii. Plaintiffs Have Not Sufficiently Alleged They Have No Adequate Remedy at Law

Alternatively, if Plaintiffs' other actions somehow *survive*, then Plaintiffs' unjust enrichment action must be dismissed because it seeks the same measure of relief as advanced in the claim alleging violation of consumer protection statutes. *See, e.g.*, *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 1998 WL 476265, at *18 (N.D. Cal. Apr. 30, 1998) (dismissing claim for restitution and unjust enrichment where it sought same measure of relief as fraud and misrepresentation claims). "It is a basic doctrine of jurisprudence that an equitable action is barred where there is an adequate remedy at law against the same person from whom relief in equity is sought." *Id.* As such, if Plaintiffs are able to state claims for deceptive practices, they "cannot show that there is no adequate remedy at law." *Id*. Therefore, their claim for unjust enrichment must be dismissed.

### iii.  Plaintiffs Have Not Adequately Alleged a Deceptive Act

Additionally, as described *supra*, Plaintiffs have not adequately alleged a deceptive act and as such Plaintiffs' unjust enrichment claim is deficient.  *See, e.g.*, *Sunny Delight*, 2007 WL 4766525 at *6 (holding as a matter of law that defendant's depiction of fruit on its product labels was not deceptive, and as such, plaintiffs "cannot make out a cognizable claim for unjust enrichment"); *Baron*, 840 N.Y.S.2d at 448-49 (claim dismissed as conclusory allegation of deception meant that plaintiff failed to allege that defendant possessed money belonging to plaintiff); *L.J.B. Corp. v. City of N.Y.*, 581 N.Y.S.2d 798, 799 (N.Y. App. Div. 1992) (dismissing unjust enrichment claim where "[t]here is no showing of deception or bad faith . . ., no unconscionability, no unjust enrichment on the part of defendants")

### iv.  Plaintiffs Have Not Adequately Alleged a Direct and Substantial Relationship with Defendants

Plaintiffs' unjust enrichment claims premised on both New York and Texas law must also be dismissed because Plaintiffs cannot and do not allege that they have a direct and substantial relationship with Defendants.  Rather, Plaintiffs alleged that they purchased *Aquafina* water from independent, third-party retailers.  (Cmplt. ¶ 54).  This is insufficient to sustain a claim for unjust enrichment under either New York or Texas law.  Under New York law, unjust enrichment is a quasi-contractual remedy, and at a minimum a quasi-contractual relationship must be alleged.  *Busch v. Basic Organics, Inc.*, 2007 WL 603385, at *6 (N.D. Tex. Feb. 27, 2007) (dismissing claim where "Plaintiff fail[ed] to allege that he had any dealings with [defendant] or that he conferred a benefit on it that would entitle him to any sort of quasi-contractual remedy"); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 333-334 (S.D.N.Y. 2003) (dismissing claim where no allegation of contractual or quasi-contractual relationship with defendants).  An unjust enrichment claim requires some type of

43

direct dealing or actual, substantive relationship with a defendant. *Busch*, 2007 WL 603385, at

*6; *In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227, 232 (S.D.N.Y. 2001); *Redtail Leasing, Inc. v.*

*Bellezza*, 1997 U.S. Dist. LEXIS 14821, at * 22 (S.D.N.Y. Sept. 30, 1997).  "The requirements

that the defendant be enriched at the plaintiff's expense and that good conscience necessitate that

the defendant make restitution to the plaintiff, clearly contemplate that the defendant and the

plaintiff must have had some type of direct dealing, an actual relationship."  *In re Motel 6 Sec.*

*Lit.*, 1997 U.S. Dist. LEXIS 3909, at *21 (S.D.N.Y. Apr. 2, 1997); *Xpedior Creditor Trust v.*

*Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004) (dismissing

claim because allegation was that Defendants had received excess compensation from their own

customers but not from plaintiff).

 Because Plaintiffs do not have the required relationship with Defendants – namely, that

they are in privity with Defendants – Plaintiffs' unjust enrichment claims under Tennessee law

must also fail.  The Tennessee Supreme Court recently held that a plaintiff not in direct privity

with a defendant must nonetheless "demonstrate that he or she has exhausted all remedies against

the person with whom the plaintiff enjoyed privity of contract" as a prerequisite to bringing an

unjust enrichment claim.  *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525

(Tenn. 2005).  Nowhere do Plaintiffs allege that they even attempted, much less exhausted, any

remedies available to them against any of the undisclosed retailers from which they allegedly

purchased *Aquafina* water, nor do Plaintiffs claim that such attempts would be futile.

 Plaintiffs' insufficient relationship with Defendants is fatal to Plaintiffs' unjust

enrichment claims under California law as well.  *Wayne v. BP Oil Supply Co.* is particularly

instructive.  2006 WL 766712 (Cal. Ct. App. Mar. 27, 2006).  The plaintiff in *Wayne* filed a class

action law suit against BP Oil Supply Company, the supplier of crude oil to refineries in

California who then processed the crude oil into gasoline, alleging *inter alia* that the defendant

was unjustly enriched by manipulating crude oil prices. *Id.* at *1. The trial court entered a judgment for the defendant on the pleadings, and plaintiff appealed. *Id.* at *2. In affirming defendant's judgment on the unjust enrichment claim, the appellate court stated that if the defendant was enriched, it was the result of monies paid by the refiners, not by the consumers of gasoline. *Id.* at *7. As such, the plaintiff's complaint did not allege that he conferred a benefit on the defendant and therefore failed to state a cause of action for unjust enrichment. *Id.* Accordingly, because Plaintiffs here have not conferred any benefit directly on Defendants, Plaintiffs' claim for unjust enrichment under California law must fail.

**D.** **Plaintiffs Have Not Adequately Alleged the Statutory or Common Law Basis for Many of Their Claims**

While Plaintiffs identify specific statues in New York, Tennessee, Texas and California which they claim Defendants have violated, Plaintiffs also claim to bring this suit under "substantially similar statutes in effect in the other States and the District of Columbia." (Cmplt. ¶ 51). Plaintiffs do not identify those statutes or how Defendants allegedly violated them. These claims should be dismissed as they are not plead with sufficient particularity and Defendants are not given sufficient notice even to answer, much less develop their defenses. *See, e.g., Copeland v. Northwest Airline Corp.*, 2005 WL 2365255, at *3, n.3 (W.D. Tenn., Feb. 28, 2005) (dismissing plaintiff's claims alleging violations of consumer protection laws of other unidentified states because plaintiff "has not specifically identified any laws of other states substantially similar to the TCPA which Defendants purportedly violated"). Similarly, Plaintiffs' allegations of unjust enrichment must be dismissed because it is impossible to tell from the face of the Complaint which States' common law supports their claim. Plaintiffs seek to certify a nationwide class "consisting of all individuals in the United States who purchased *Aquafina* from the date of its introduction through the present . . . ." (Cmplt. ¶ 17). "The Class

45

consists of hundreds of thousands, if not millions, of individuals who purchased *Aquafina*, not only within the States of which Plaintiffs are citizens, but the other States within the United States." (Cmplt. ¶ 18). Yet they do not specify in their allegations of unjust enrichment which states' laws support their claims. As such, Plaintiffs' unjust enrichment claim must be dismissed. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2008 WL 426522, at *12 (N.D. Cal. Feb. 14, 2008) (dismissing Plaintiffs' unjust enrichment claim, stating that, "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead"); *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008).

## CONCLUSION

Defendants' motion to dismiss should be granted. Plaintiffs' claims are preempted by federal law. Congress passed a law determining the standard of identity for purified water as part of a pervasive and comprehensive legislative scheme. Plaintiffs seek to use state law to impose different requirements for purified water than those imposed by the FDA's national standard of identity. The FDA has stated that the source of purified drinking water is not material and does not have to be disclosed. The fact that the Plaintiffs think otherwise does not allow them to overrule the FDA. These claims are therefore expressly preempted by 21 U.S.C. § 343-1(a)(1) or are impliedly preempted. Plaintiffs also do not adequately allege their state law claims because they are conclusory and vague and allege no "plausible" false, misleading or deceptive acts, no cognizable injury, no reliance, no specific facts, no unjust enrichment and no breach of implied warranty under the Song-Beverly Act (as to California residents). Plaintiffs' claims should be dismissed.

Dated: June 16, 2008
         New York, New York

    /s/ Louis M. Solomon                          /s/ Donald H. Tucker, Jr.

Louis M. Solomon (LS 7906)
Michael S. Lazaroff (ML 0149)
Jennifer Jones (JJ 5987)
Patrick J. Dempsey (PD 8372)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000
lsolomon@proskauer.com
*Attorneys for Defendants PepsiCo, Inc. and
The Pepsi Bottling Group, Inc.*

Donald H. Tucker, Jr.*
James M. Parrot (JP 5297)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center
Raleigh, NC 27602
(919) 821-6681
dtucker@smithlaw.com
*Attorneys for Defendant Pepsi Bottling
Ventures LLC (*admitted pro hac vice)*