**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**In re: PepsiCo, Inc., Bottled Water Sales and**
**Marketing Practices Litigation**

**This Document Relates to All Actions**

**7:08-md-01901 (CLB) (MDF)**

**MDL No. 1903**

**ECF FILING**

————————————————————————


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES    ……………………………………………..……………iii

FACTUAL BACKGROUND......…………………………………………..…………..…..1

ARGUMENT…………………………………………………………………………….2

    I.    THE STANDARD FOR CONSIDERING CLAIMS PURSUANT
        TO FED. R. CIV. P. 12(b)(6)…………………………………...……………2

    II.    FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS' STATE
        LAW CLAIMS…………………..................................................................... 3

        A.  The NLEA Does Not, By Its Terms, Expressly Preempt Plaintiffs'
           State Law Claims……………………………………………….……………..4

        B.  The *Aquafina* Label Did Not Comply with FDCA Labeling
           Requirements…………………………………………………….…...…8

        C.  Plaintiffs' Claims Are Not Impliedly Preempted…….. ……….……………11

    III.    PLAINTIFFS HAVE ADEQUATELY ALLEGED VIOLATIONS OF THE
        UNFAIR AND DECEPTIVE TRADE PRACTICE LAWS
        OF NEW YORK, CALIFORNIA, TEXAS AND TENNESSEE……  ………14

        A.  Plaintiffs' have Adequately Alleged Deceptive Conduct on the Part of
           Defendants……………………………………………...…………………....14

        B.  Plaintiffs' UDAP Claims are Pled with the Requisite Particularity…………20

        C.  Plaintiffs' Have Adequately Alleged Injury…………………………23

        D.  To the Extent Required, the Complaint Pleads Reliance on
           Defendants' Misrepresentations…………………….………………………28

        E.  Plaintiffs' Claims Are Not Exempted From The Tennessee Consumer
           Protection Act……………………………………………………………..31

    IV.    PLAINTIFFS HAVE ADEQUATELY ALLEGED CLAIMS FOR
        UNJUST ENRICHMENT………………………….………………………33

        A.  Plaintiffs Have a Sufficient Relationship with the Defendants…………….. 35

        B.  Plaintiffs Need Not Allege an Independent Claim of Illegality……………...40

C.  Plaintiffs Need Not, at This Stage of the Proceedings, Establish
That They Have No Adequate Remedy at Law…………..... ..…………..…41

V.    DEFENDANTS' LAST DITCH CHALLENGES TO PLAINTIFFS'
CLAIMS FAIL……………………… …………………………………....……..42

CONCLUSION…………………………………………………………………………43

## TABLE OF AUTHORITIES

*62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*,
    340 U.S. 593 (1951)…………………………………………...…………………………..6

*Accuimage Diagnostics Corp v. Terarecon, Inc.*,
    260 F. Supp. 2d 947 (N.D. Cal. 2003)…………………………………………..……..40

*Agfa Photo U.S. Corp. v. Parkham*,
    2007 U.S. Dist. LEXIS 40980 (E.D. Tenn. June 5, 2007)………………………...……22

*Alan Neuman Prods., Inc. v. Albright*,
    862 F.2d 1388 (9th Cir. 1988)……………………………………………………....23

*Alford Chevrolet-Geo, Et Al. v. Jett Jones And Envo-Tech, Inc.*,
    91 S.W.3d 396 (Tex. Ct. App. 2002)……………………………………………………29

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
    300 A.D.2d 608 (2d Dept. 2002)……………………………………………..……17

*Anunziato v eMachines*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005)……………………………………………....29-30

*Argyle Independent School District Ex. Rel. Bd of Trustees v. Wolf*,
    234 S.W. 3d 229 (Tex. App. Fort Worth  2007)………………………………………...34

*Ball v. Johanns*,
    2008 U.S. Dist. LEXIS 9609 (E.D. Cal. Jan. 29, 2008)  ………………………………34

*Baron v. Pfizer, Inc.*,
    840 N.Y.S. 2d 445 (3rd Dept. 2007)……………………………………………………25, 35

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)……………………………………………………………………4, 10-11

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)…………………………………………………………………3

*Bennett v. Visa U.S.A., Inc.*,
    198 S.W.3d 747 (Tenn. Ct. App. 2006)……………………………………………....39

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir.1996)…………………………………………………………....2

*Best Buy v. Barrera*,
    214 S.W. 3d 66 (Tex. App. Corpus Christi 2006)………………………………………34

*Bildstein v. MasterCard Int'l Inc.*,
  329 F.Supp. 2d 410 (S.D.N.Y 2004)……………………………………….....25

*Bildstein v.MasterCard Int'l Inc.*,
  2005 U.S. Dist. LEXIS 10763 (S.D.N.Y. June 7, 2005)………………………………...24

*Blue Cross/Blue Shield of Ala. v. Wyeth Pharm., Inc.*,
  2006 WL 1241019 (Ala. Cir. Ct. Feb. 27, 2006)……………………………………...34

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003)…………………………………………………....15

*Brandt v. CremaLita Mgmt.*,
  2006 N.Y. Misc. LEXIS 4101 (N.Y. Sup. Ct. June 9, 2006)……………………………24

*Brungard v. Caprice Records, Inc.*,
  608 S.W.2d 585 (Tenn. Ct. App. 1980)……………………………………….....18

*Burnette v. Carothers*,
  192 F.3d 52 (2d Cir.1999)………………………………………………………2

*Busch v. Basic Organics, Inc.*,
  2007 U.S. Dist. LEXIS 13272 (N.D. Tex. Feb. 27, 2007)……………………………38

*Cal. Fed. Bank v. Matreyek*,
  8 Cal. App. 4th 125 (1992)……………………………………………….34, 37

*California Fed. Sav. & Loan Assn. v. Guerra*,
  479 U.S. 272 (1987)……………………………………………………………11-12

*Caraker v. Sandoz Pharms. Corp.*,
  172 F. Supp. 2d 1018 (S.D. Ill. 2001)…………………………………………9

*Cattie v Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007)…………………………………………..29-30

*Celtic Life Ins Co. v. Coats*,
  885 S.W.2d 96 (Tex. 1994)……………………………………………………30

*Chavez v Blue Sky Natural Bev. Co.*,
  503 F.Supp.2d. 1370 (N.D. Cal. 2007)……………………………………..……27

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992)………………………………………………………..…3, 12

*City and County of San Francisco v. Philip Morris, Inc.,*
    957 F. Supp 1130 (N.D. Cal. 1997)……… ……………………………………….…39

*Consol. Risk Services, Inc.. v. Automobile Dealers WC Self Insurance Trust,*
    2007 U.S. Dist. LEXIS 22097 (N.D.N.Y. March 27, 2007)……………………………..41

*Cosmas v. Hassett,*
    886 F.2d 8 (2d Cir. 1989)………………………………………………………...20

*County of Solano v. Vallejo Redevelopment Agency,*
    75 Cal.App.4th 1262 (1999)……………………………………………………34, 37

*Cox v. Microsoft Corp.,*
    8 A.D.3d 39 (1st Dept. 2004)……………………………………………………...36

*Crosby v. National Foreign Trade Council,*
    530 U.S. 363 (2000)……………………………………………………..…………12

*Day v. AT & T Corp.,*
    63 Cal.App.4th 325 (1998) ………………………………………………………...19

*Delahunt v. Cytodyne Techs.,*
    241 F. Supp. 2d 827 (S.D. Ohio 2003)…………………………………………..…41

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987)…………………………………………………………20

*Donahue v. Ferolito, Vultaggio & Sons,*
    786 N.Y.S. 2d 153 (1st Dept. 2004)……………………………………………..25

*Dreieck Finanz Ag v. Sun,*
    1989 U.S. Dist. LEXIS 9623 (S.D.N.Y. Aug. 14, 1989)……………………………36, 40

*El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.,*
    1999 U.S. Dist. LEXIS 9339 (N.D. Tex. May 27, 1999)……………………….…..22

*English v. Gen. Elec. Co.,*
    496 U.S. 72 (1990)………………………………………………………….....11

*Feitler v. Animation Celection, Inc.,*
    13 P.3d 1044 (Or. Ct. App. 2000)………………………………………………..25

*First Nationwide Sav. v. Perry,*
    11 Cal. App. 4th 1657 (1992)……………………………………………….…..40

*Fleming v. Murphy,*
    2007 WL 2050903 (Tenn. Ct. App. 2007)……………………………………………..31

*Fraker v. KFC Corporation,*
    2007 U.S. Dist. LEXIS 32041 (S.D. Cal. 2007)…………………………………..13-14

*Freedom Holdings, Inc. v. Spitzer,*
    357 F.3d 205 (2d Cir.2004)………………………………………………...2

*Freeman Indus., LLC v. Eastman Chemical Co.,*
    172 S.W.3d 512 (Tenn. 2005)………………………………………………..34, 36, 39

*Geisler v. Petrocelli,*
    616 F.2d 636 (2d Cir.1980)……………………………………………….………2

*Ghirardo v. Antonioli,*
    14 Cal. 4th 39 (1996)………………………………………………………40

*Golden Pac. Bancorp v. FDIC,*
    273 F.3d 509 (2d Cir. 2001)………………………………………………..33

*Graham v. Wyeth Laboratories, Div. of American Home Products,*
    666 F. Supp. 1483 (D. Kan. 1987)…………………………………………...……9

*Hall v. Time, Inc.,*
    158 Cal. App. 4th 847 (4th App. Dist. 2008)………………………………...29-30

*Harvey v. Ford Motor Credit Co.,*
    8 S.W.3d 273 (Tenn. Ct. App. 1999)………………………………………...21, 31

*Hill v. John Banks Buick, Inc.,*
    875 S.W.2d 667 (Tenn. Ct. App. 1994)……………………………………………26

*Hillsborough County v. Automated Med. Labs.,*
    471 U.S. 707 (1985)…………………………………………………………8

*Hinchliffe v. American Motors Corp.,*
    440 A.2d 810 (Conn. 1981)…… ………………………………………………26

*Hirsch v. Bank of America,*
    107 Cal. App. 4th 708 (Cal. App. 2003)………………………………..……37, 40

*Hoover v. Ronwin,*
    466 U.S. 558 (1984)………………………………………………………….2

*Horton v. Cooper*,
   2002 Tex. App. LEXIS 4186 (Tex. Ct. App. June 12, 2002)……………………….…30

*International Paper Co. v. Ouellette*,
   479 U.S. 481 (1987)……………………………………………………………………..13

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
   894 A.2d 1136 (N.J.Super.App.Div.2006)……………………………………………...26

 *In re Grand Theft Auto*,
   2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. July 30, 2008)…………………………..……42

*In re Motel 6 Sec. Litig.*,
   1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. April 2, 1997)…………………………………38

*In re Motel 6 Sec. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001)……………………………………………..……37

*In re Nassau County Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006)………………………………………………………...…..7

In re Relafen Antitrust Litigation,
   221 F.R.D. 260 (D. Mass. 2004)…………………………………………………………39

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004)…………………………………………………….…...34

*In Re Tobacco II Cases*,
   47 Cal.Rptr.3d 917 (2006)……………………………………………………………...…30

*In re W. Va. Rezulin Litig.*,
   585 S.E.2d 52 (W. Va. 2003)…………………………………………………………...…26

*In re Wiggins*,
   273 B.R. 839 (Bankr.D.Idaho 2001)…………………………………………………...…26

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007)…………………………………………………………...….3

*IUE AFL-CIO Pension Fund v. Herrmann*,
   9 F.3d 1049 (2d Cir.1993)…………………………………………………………………2

*Jenkins v. Brown*,
   2007 WL 4372166 (Tenn. Ct. App. Dec. 14, 2007)……………………………………..17

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977)………………………………………………………....4

*Kyger v. VeraVest Inv., Inc.*,
    2004 WL 1043111 (N.D. Tex. May 6, 2004)………………………………………19

*LaBoy v. Better Homes Depot, Inc.*,
    2004 U.S. Dist. LEXIS 30091(E.D.N.Y. July 14, 2004)………………………….....21

*Lectrodryer v. SeoulBank*,
    Cal. App. 4th 723 (2007)……………………………………………………………40

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)………………………………………………………….2

*L.J.B. Corp. v. City of N.Y.*,
    581 N.Y.S.2d 798 (1st Dept. 1992)…………………………………………………35

*Mazur v. Ebay Inc.*,
    2008 U.S. Dist. LEXIS 16561 (N.D. Cal. Mar. 3, 2008)……………………………22-23

*McIntosh v. Wiley*,
    2006 U.S. Dist. LEXIS 89589 (S.D. Tex. Dec. 11, 2006)…………………...……37, 40

*McKee Foods Corp. v. Pitney Bowes, Inc.*,
    2007 U.S. Dist. LEXIS 20630 (E.D. Tenn. March 22, 2007)…………………………....21

*McKinniss v. Kellogg USA*,
    2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007)…………………………...19-20

*McKinniss v. Sunny Delight Beverages Co.*,
    2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007)……………………………19, 35

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)…………………………………………………………...3, 11

*Milliken v. Crye-Leike Realtors*,
    2001 Tenn.App. LEXIS 472 (July 5, 2001)………………………………………..31

*Mills v. Giant of Maryland*,
    441 F. Supp. 2d 104 (D.D.C. 2006)…………………………………………...9, 10

*Naifeh v. Valley Forge Life Ins. Co.*,
    2005 WL 1073637 (Tenn. Ct. App. 2005)…………………………………………32

*Newbro v. Freed*,
　　409 F. Supp. 2d 386 (S.D.N.Y. 2006)……………………………………...35-36, 40

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
　　514 U.S. 645 (1995)………………………………………………………....4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
　　85 N.Y.2d 20 (1995)……………………………………………………………15

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
　　129 Fed. Appx. 955 (6th Cir. 2005)……………………………………………..22

*Paschall's, Inc. v. Dozier*,
　　407 S.W.2d 150 (Tenn. 1966)…………………………………………...34, 36

*Patel v. Holiday Hospitality Franchising, Inc.*,
　　172 F. Supp. 2d 821 (N.D. Tex. 2001)…………………………………….…22

*Pelman v. McDonald's Corporation*,
　　396 F.3d 508 (2d Cir. 2005)…………………………………………………...15, 20

*Pfizer Inc. v. Superior Court*,
　　51 Cal.Rptr. 3d 707 (2006)…………………………………………………30

*Pharmaceutical Research and Mfrs. of America v. Walsh*,
　　538 U.S. 644 (2003)…………………………………………………………12

*Podolsky v. First Healthcare Corp.*,
　　50 Cal.App.4th 632 (1996)………………………………………………..…27

*Proctor v. Chattanooga Orthopaedic Group, P.C.*,
　　2008 WL 2399642 (Tenn. Ct. App. June 10, 2008)…………………….…………...18

*Prudential Botts & Assocs. Realtors, Inc. v. R & E Props., LLC*,
　　2003 Tenn. App. LEXIS 454 (Tenn. Ct. App. June 25, 2003)…………………………31

*Ramirez v. American Home Products*,
　　2005 U.S. Dist. LEXIS 40577 (S.D. Tex.. Sept. 16, 2005)……………………………22

*Reading Intl. Inc. v. Oaktree Capital Management LLC*,
　　317 F. Supp. 2d 301 (S.D.N.Y. 2003)……………………………………………..37

*Redtail Leasing, Inc. v. Bellezza*,
　　1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sept. 30, 1997)…………………...…38-39

*Rein v. Koons Ford, Inc.*,
    567 A.2d 101 (Md. 1989)……………………………………………………………….26

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947)……………………………………………………………………4

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*,
    748 F.2d 774 (2d Cir.1984)……………………………………………………………2

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)……………………………………………………………………3

*Scott v. Western Int'l Surplus Sales, Inc.*,
    517 P.2d 661 (Or. 1973)……………………………………………………………...26

*Seimens Medical Solutions USA, Inc. v. Sunrise Medical Tech., Inc.*,
    2005 U.S. Dist. LEXIS 43560 (N.D. Tex. Mar. 16, 2005)…………………………18, 20

*Sergeant Oil & Gas Co. v. National Maintenance & Repair*,
    861 F. Supp. 1351 (S.D. Tex.1994)…………………………………………………...18

*Service Road Corp. v. Quinn*,
    698 A.3d 258 (Conn. 1997)……………………………………………………………26

*Shersher v. Superior Court*,
    154 Cal. App. 4th 1491 (2007)………………………………………………………..34

*Silkwoo*d v. *Kerr-McGee Corp.*,
    464 U.S. 238 (1984)………………………………………………………………...…11

*Sims v. First Consumers National Bank*,
    303 A.D.2d 288 (1st Dept. 2003)……………………………     …………………………17

*Singer v. AT&T Corp.*,
    185 F.R.D. 681 (S.D. Fla. 1998)……………………………………………………32, 34

*Skinner v. Steele*,
    730 S.W.2d 335 (Tenn. Ct. App. 1987)…………………………………….…...32

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999)…………………………………………………………....15, 25

*Southwestern Bell Co. v. Marketing on Hold, Inc.*,
    170 S.W. 3d 814 (Tex. App.. Corpus Christi 2005)……………………………………..34

*Sperry v. Crompton Corp.*,
　　8 N.Y.3d 204 (2007)……………………………………………………………………….35

*State v. New Beginning Credit Ass'n., Inc.*,
　　2006 Tenn. App. LEXIS 346 (Tenn. Ct. App. 2006)……………………….....25-26

*Stern v. Leucadia Nat'l Corp.*,
　　844 F.2d 997 (2d Cir. 1988)…………………………………………………………….20

*Stickrath v. Globalstar, Inc.*,
　　527 F. Supp. 2d 992 (N.D. Cal. 2007)……………………………………….20, 23

*Stracener v. Swindle*,
　　1995 Tenn. App. LEXIS 471 (July 14, 1995)………………………………………...31

*Stutman v. Chemical Bank*,
95 N.Y.2d 24 (2000)………………………………………………………………….15-16

*Swift Freedom Aviation,. Sept. LLC v. R.H. Aero*,
　　2005 U.S. Dist. LEXIS 37261 (E.D. Tenn. 2005)………………………………….....26

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*,
　　2008 U.S. Dist. LEXIS 25641 (S.D. Tex. Mar. 31, 2008)………………………....19

*Talalai v. Cooper Tire & Rubber Co.*,
　　823 A.2d 888 (N.J.Super.Ct. 2001)……………………………………………………..26

*Thiedemann v. Mercedes-Benz USA, Inc.*,
　　872 A.2d 783 (N.J. 2005)……………………………………………………………….26

*Tri-State Chemicals, Inc. v. Western Organics, Inc.*,
　　83 S.W.3d 189 (Tex. App.2002)……………………………………………………....37

*Tucker v. Sierra Builders*,
　　180 S.W.3d 109 (Tenn. Ct. App. 2005)…………………………………...…..40

*Tucker v. SmithKline Beecham Corp.*,
　　2007 U.S. Dist. LEXIS 69802 (S.D. Ind. 2007)……………………………………….9

*United States v. Sirah*,
　　2008 U.S. App. LEXIS 14319 (July 9, 2008)……………………………………….7

*Vermont Pure Holding, Ltd. v. Nestle Waters N. Amer., Inc.*,
　　2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006)…………………………4-5, 13

*Vess v. Ciba Geigy Corp USA*,
   317 F.3d 1097 (9th Cir. 2003)……………………………………………………….23

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal.App.4th 1158 (2002)……………………………………………….…..27

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
   249 S.W.3d 301 (Tenn. 2008)……………………………………………...…42

*Watson v. McGinnis*,
   964 F. Supp. 127 (S.D.N.Y.1997)……………………………………...…………….2

*Wayne v. BP Oil Supply Co.*
   2006 WL 766712 (Cal. Ct. App. Mar. 27, 2006)………………………………………..39

*Weigel v. Ron Tonkin Chevrolet, Inc.*,
   690 P.2d 488 (Or. 1984)………………………………………………………...26

*Weitzel v. Barnes*,
   691 S.W.2d 598 (Tex. 1985)……………………………………………….30

*White v. Early*,
   211 S.W.3d 723 (Tenn.Ct.App.2006)……………………………………………...31

*Wilens v. TD Waterhouse Group, Inc.*,
   120 Cal. App. 4th 746 (Cal. Ct. App. 2003)……………………………………………30

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008)…………………………………………………..27

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004)……………………………………...…38

<u>**RULES AND STATUTES**</u>

21 C.F.R. 100.1(c)(4)……………………………………………………………..6

21 C.F.R. § 165.110……………………………………………………...………..8

21 U.S.C. § 301, *et seq*...…………………………………………………………4

21 USC § 343(a)……………………………………………………………………6

58 Fed. Reg. 393……………………………………………………………...9

60 Fed. Reg. 57…………………………………………………………………...8, 11-12, 13

60 FR 57075-01………………………………………………………………………...9

60 Fed Reg. 57,076…………………………………………………………………....9

Cal. Civ. Code §1770…………………………………………………………..19, 27

DTPA § 17.46, *et seq*…………………………………………………....18,29

FED. R. CIV. P. 8……………………………………………………………..41

FED. R. CIV. P. 12 (b)(6)…………………………………………....2

Federal Insecticide, Fungicide, and Rodenticide Act……………………………………10

F.R.Civ. Pro. 9(b)…………………………………………………...20

New York General Business Law Section 349…………………………………..15, 24-25

Tenn. Code Ann. §47……………………………………………....18, 25, 31-32

Texas' Deceptive Trade Practice Act,
    Tex. Bus. & Com. Code § 17.45 et seq…………………………………………18

## FACTUAL BACKGROUND

*Aquafina* was first introduced into the bottled water industry in 1994, with national distribution through PepsiCo, Inc. and its bottling network in 1997.  In the United States, bottled water is a fifteen billion dollar a year, highly competitive industry where companies continuously market their water as cleaner, safer and healthier than rival water. ¶¶ 24-25.[1] *Aquafina* was the best selling brand of bottled water in the United States prior to the public revelations as to the true source of its water – public drinking supplies.  In other words, it was re-refined "tap water."  ¶¶ 26, 29-30. *Aquafina* misleadingly and ambiguously labeled the product with the sun rising over a mountain range as well as the slogan "Pure Water – Perfect Taste" and also stated on the labels that it was "Bottled at the Source P.W.S." without indicating that the term "P.W.S" referred to a public water source.  ¶¶ 31, 35.  By doing so, *Aquafina* falsely implied that the origin of the water was from a mountain source – and led consumers to believe that the source was more pure than tap water.  ¶ 36-38.  Although Pepsi began relabeling *Aquafina* on July 27, 2007 to include the information that the source of the water was public water source tap water and even admitted that the prior labeling was confusing to consumers, Defendants continued to sell or permitted the continual sale of *Aquafina* with the prior labeling.  ¶¶ 39-41.

Plaintiffs assert just two claims on a nationwide class basis:  one for violations of state Uniform Deceptive Acts and Practices Statutes and one for unjust enrichment. These are brought against Defendants, PepsiCo, Inc. and The Pepsi Bottling Group, Inc., and Pepsi Bottling Ventures LLC ("Defendants").[2]

Defendants have now moved to dismiss the Complaint on multiple, often scattershot,

---

[1] "¶__" refers to paragraphs of Plaintiffs' Consolidated and Amended Class Action Complaint ("Complaint"), filed May 9, 2008.
[2] Plaintiffs herewith withdraw their third cause of action under the California's Beverly-Song Act.

grounds. Despite the length of their memorandum ("Def. Mem.") (or perhaps the length derives from their lack of any single meritorious position), none, as we show below, has any merit.

## ARGUMENT

### I.    THE STANDARD FOR CONSIDERING CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss should be denied "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993) (*quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). *See, e.g.*, *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in a light most favorable to the plaintiff. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). A complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (internal quotations omitted). For purposes of Rule 12(b)(6) motions, the "defendant has the burden of proof." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

The Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see also e.g.*, *Watson v. McGinnis*, 964 F. Supp. 127, 130-31 (S.D.N.Y.1997). "[T]he issue is not whether a plaintiff will ultimately prevail but

2

whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007), has prompted some courts to reconsider the standard for deciding motions to dismiss under Rule 12(b)(6). Contrary to what Defendants infer in citing *Twombly,* the Second Circuit, taking note of the "considerable uncertainty" created by the decision, has concluded that the holding did not require a "universal standard of heightened fact pleading" but rather required a "flexible 'plausibility standard' [obliging] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007). This, however, is not such a context because the claims are eminently plausible: consumers would consider it material in deciding whether to purchase *Aquafina* water whether it was, in reality, refined tap water from public water sources. The widespread publicity that accompanied the public disclosure last year of the actual source of *Aquafina*'s water simply underlines that Defendants' deception did matter to consumers and the public.

## II. FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS' STATE LAW CLAIMS

There are no federal statutory provisions that expressly preempt any of Plaintiffs' state law claims arising from Defendants' misleading and deceptive labeling practices. This is crucial because the "purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992), and Courts have "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Accordingly, preemption analysis starts with the assumption that "the historic police powers of the States [a]re not to be superseded … unless that was the clear and manifest purpose of Congress."

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). "This assumption provides assurance that 'the federal-state balance' will not be disturbed unintentionally by Congress or unnecessarily by the courts." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (citation omitted).

This presumption against preemption is heightened in areas such as consumer fraud and traditional tort remedies where the issue becomes whether "federal law is said to bar state action in fields of traditional state regulation." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 755 (1995); *see also Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005). Significantly, federal laws containing a preemption clause do not automatically escape the presumption against preemption. *Id.* This presumption applies to the statute at issue here.

### A.    The NLEA Does Not, By Its Terms, Expressly Preempt Plaintiffs' State Law Claims

The preemption clause at issue is from The Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 301, *et seq.* ("NLEA") of the Federal Food, Drug, and Cosmetic Act ("FDCA"), and states in relevant part:

> (a) No State or political subdivision of a state may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce --
>
>> (1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title . . .

21 U.S.C. § 343-1(a)(1). Plaintiffs recognize that this section "clearly establish[ed] the intent of Congress to entirely occupy at least a portion of the field of food regulation." *Vermont Pure Holding, Ltd. v. Nestle Waters N. Amer., Inc.*, 2006 U.S. Dist. LEXIS 13683, *13 (D. Mass. Mar. 28, 2006). But, as Judge Woodcock next stated in *Vermont Pure Holding*, "[t]he more difficult task is to

describe what portion and delineate the scope of the preemptive effect express in Paragraph (a)(1)." *Id.* Here the preemptive effect of the paragraph does not reach Plaintiffs' claims that Defendants went beyond the FDCA's prescription and affixed additional statements and images on the labels of *Aquafina* that were misleading to consumers, including "Pure Water", the representation of the mountains with a rising sun, and the statement "Bottled At The Source P.W.S.".

In *Vermont Pure Holdings,* the Massachusetts District Court, analyzing the preemption clause of the NLEA, held that it did not preempt state nutrition labeling requirements because they were not inconsistent with federal requirements. The Court reasoned that the plaintiff, Vermont Pure, questioned the truth of defendant Nestle's advertising, not whether Nestle's Poland Springs bottled water met FDA standards, and found that "while the FDCA clearly does not confer a private right of action to enforce its regulations directly, mere regulation of a term does not necessarily bar all false advertising claims relating to that term." *Id* at *2. In determining that the plaintiff's misbranding claims were not preempted, the Court noted that "the question here is not whether Poland Spring water is misbranded for purposes of the FDCA, but whether Nestle has falsely or misleadingly represented the purity and source of Poland Spring water." *Id.* at *9. Accordingly, the court found that preemption did not apply and denied Nestle's motion to dismiss because "nothing in the text, legislative history, agency interpretation, or case law of the FDCA suggests that it preempts Vermont Pure's claims regarding Nestle's allegedly misleading representations regarding the quality, purity, treatment, contamination and source of Poland Spring water." *Id.* at *11. Likewise, in this case, nothing in the FDCA suggests it preempts Plaintiffs' claims regarding Defendants' allegedly misleading representations regarding the quality, purity and source of its *Aquafina* water.

An analysis of the statute confirms this finding.  Section 343-1(a)(1) of NLEA "relates *only* to those state requirements for foods that are the 'subject of a *standard of identity* established under section 341 of this title.'"  *Vermont Pure Holding*, 2006 U.S. Dist. LEXIS 13683, *14 (citation omitted) (emphasis added).  A "standard of identity' is a regulation in which the FDA fixes the ingredients of, and consequently the definition of, a food."  *Id.* (citing *62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593, 598 (1951)).[3]  The labeling aspects here do not concern at all the processing and cleaning requirements for "bottled water" to be called "purified drinking water," as *Aquafina* is called.  Here, Defendants added superfluous, misleading statements about the source of its *Aquafina* "purified drinking water" and affixed "mountain spring" type images on those labels, all designed to mislead consumers about the true source of *Aquafina* water (¶¶ 35-36), and all of which are not expressly regulated by the FDA or governed by the FDCA. Accordingly, Defendants' actions are not covered by the express preemption terms of Section 434-1(a)(1).[4]

Second, the preemptive scope of section 434-1(a) must be very narrowly construed.  In the same section of the act, Congress expressly provided – in a section of the Act conveniently ignored by Defendants – that the NLEA "shall not be construed to preempt any provision of State law, unless

---

[3] Defendants also rely upon subparagraph (g) of 21 USC § 343(a) (Def. Mem. at 11) for its argument that *Aquafina* is not misbranded.  However, misbranding under the federal statute is not claimed and is, therefore, irrelevant.  Furthermore, subparagraph (g) is not one of the subparagraphs for which preemption of state labeling claims is provided.  *See* 21 U.S.C. § 343-1(a)(2) and (3).  Thus, Defendants' reliance upon this paragraph fails.

[4] While Defendants try to make much of the term "identical" in the statute, the term "does not refer to the specific words used in the state requirement, but to the direct and indirect effects of the requirement." *Id.* , *15 (citing 21 C.F.R. 100.1(c)(4).  Indeed, the court in *Vermont Pure Holding* held "identical" "means that the language is substantially the same language as the comparable provision of the [FDCA], and that any difference does not result in the imposition of materially different requirements."  *Id.* (citation omitted).  Here all Plaintiffs allege is that Defendants violated Deceptive Business Practices acts by adding misleading

6

such provision is expressly preempted under [this] section." NLEA, Pub. L. No. 101-535, 104 Stat. 2353, 2364 (1990), § 6(c)(1). Lest there still be any doubt, Congress further stated, *inter alia*, that the above-cited preemption clause and section 6(c)(1) "shall not be construed to affect preemption, express or implied, of any such requirement of a State or political subdivision, which may arise under the Constitution, any provision of the [FDCA] not amended by subsection (a) [of 28 U.S.C. § 343-1], any other Federal law, or any Federal regulation, order, or other final agency action…" NLEA, § 6(c)(3). Since Congress explicitly set forth in the law that nothing, except for that which was expressly preempted, would be consider preempted, to read 12 U.S.C. § 343-1(a)(1) in any other manner would render Sections 6(c)(1) and (3) as superfluous, as result to be avoided. *See United States v. Sirah*, 2008 U.S. App. LEXIS 14319, *4 (July 9, 2008)(citing *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("courts should avoid statutory interpretations that render provisions superfluous")(quotation and citation omitted)).

Indeed, the ultimate conclusion to Defendants' position becomes illogical. If it is true, as they would have it, that 343-1(a)(1) preempts all state claims regarding labeling then anything else they put on the labels regarding source information, marketing graphics, etc. would not be actionable, no matter how false or misleading they may be. Defendants use the regulation to assert that, once its product conforms to the FDA standards for "purified drinking water," they have a "free pass" to include any further information about the source or quality of its water, regardless of the falsity or misleading nature of such information. Surely that cannot be the case or Congress' intent and such a conclusion necessarily is incompatible and wars with Section 6(c)(3). Yet, that is what Defendants would have the Court rule. Because the Supreme Court has held that a presumption

---

elements to its labels beyond what is proscribed and/or prescribed by the FDA regulations.

against preemption applies and may be overcome only by "clear and manifest" congressional intent to the contrary, *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 715 (1985), there is no such clear and manifest intent here and Plaintiffs' state law claims are not preempted.

**B.      The *Aquafina* Label Did Not Comply with FDCA Labeling Requirements**

Defendants are also unable to rely upon express preemption because *Aquafina's* label did not comply with the FDCA requirements.   Defendants argue that under 21 C.F.R. § 165.110(a)(3)(ii), a manufacturer who complies with the regulatory requirements for "treating" water sufficiently in order to meet the definition of "purified drinking water" in 21 C.F.R. § 165.110(a)(2)(iv) is not required to disclose the source of the water.   Def. Mem. at 10.   Thus, Defendants argue that failing to disclose the source of purified water on the *Aquafina* label is not misleading as a matter of law.   *Id.* at 11.   This argument suffers from multiple flaws.

First, Defendants' argument is contrary to the express language of the FDA law and regulations.   In explaining the general rule that the source of purified water need not be disclosed, the FDA stated that it "does not deem source labeling of ingredient water from a municipal source as a material fact *unless labeling representations are made or suggested that the water possesses particular properties.*"   Beverages: Bottled Water, 60 Fed. Reg. 57,076 (Nov. 13, 1995) (emphasis added).   In the case at bar, Defendants made such representations.   The language and graphics on the *Aquafina* bottles, including the mountains and statement "Bottled At The Source P.W.S." implied facts about their source that were untrue.

This is exactly what the FDA would deem material.   It recognized that "the use of certain graphics on a label of bottled water may be misleading to consumers if the source of the water is different than the source depicted or implied."   *Id.* at 57,104.   The FDA warned for example, that a

8

country setting on a label may mislead customers into believing that the product is spring water when it is not. 60 FR 57075-01, Section II(D)(2)(Comment 77), p. 61. Indeed the FDA specifically noted its concern that many bottled water labels were misleading to consumers with words that almost describe this case: "[A] picture of a blue-green mountain spring on a label of bottled water may indicate to consumers that the water comes from a mountain spring. Such a label is misleading to consumers if the water actually comes from the municipal water supply of an urban area located far from any mountains." 58 Fed. Reg. 393, 395 (Jan. 5, 1993). Here, the use of snow-capped mountains with a rising sun on the label was designed to create the impression that the water originated from that mountainous source. Yet there is no dispute that *Aquafina* tap water did *not* originate from snow capped mountains, or anything remotely comparable. Thus, Defendants engaged in labeling practices that the FDA itself recognized to be potentially misleading. Accordingly, the general rule that the source of purified water need not be disclosed is inapplicable here because under these circumstances, where "labeling representations [were] made [which] suggested that the water possesses particular properties" a clear and understandable source of the water *is* material according the FDA and should have been included on the label. 60 Fed Reg. 57,076.[5]

Defendants' reliance upon *Mills v. Giant of Maryland*, 441 F. Supp. 2d 104 (D.D.C. 2006), in arguing that any language not contained in the FDA regulations may not be included on a label of

---

[5] Even if Defendants complied with FDA labeling requirements (and they did not) liability may still attach for their actions going beyond those labeling requirements. The courts have consistently held that FDA regulations establish only "minimum standards" that do not preempt state law causes of action. *See, e.g., Tucker v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 69802, *22 (S.D. Ind. 2007) ("courts have generally maintained that the agency's labeling requirements represent only a minimum standard"); *Caraker v. Sandoz Pharms. Corp.*, 172 F. Supp. 2d 1018, 1033 (S.D. Ill. 2001); *Graham v. Wyeth Laboratories, Div. of American Home Products*, 666 F. Supp. 1483 at 1491 (D. Kan. 1987). Thus, satisfying a minimum standard does not mean that litigation is precluded.

bottled water is misplaced.  The plaintiffs in *Mills* were claiming milk labels generally were inadequate and that the dangers of lactose intolerance warranted warnings not called for by the FDA on all milk labels.  Thus, the *Mills* plaintiffs were seeking to impose an across the board change to the way all milk is labeled.  This is decidedly not the case here.

Unlike *Mills*, the Plaintiffs in this case are advancing claims relating to the specific label Defendants chose to use and Plaintiffs do not contend that all bottled water, or even types of bottled water, should be labeled in a particular way and success in this litigation would not impose any labeling "requirements."  For example, the Court could find that Defendants' use of the term "pure", in connection with its vignettes of snow-capped mountains results in misleading consumers into believing the source of the water is springs from snow-capped mountains, as opposed to public tap water.  This would not impose any labeling "requirements" on Defendants except to not mislead consumers, and while it might induce Defendants to revisit its advertising strategy, that conclusion would not create any new "requirements" on other bottled water labels.

Defendants' reliance on *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), is thus misplaced.  In *Bates,* the Supreme Court held that certain labeling or packaging claims were preempted under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) because FIFRA's preemption provision expressly applies only to state-law "requirements for labeling or packaging." *Id.* at 443-444.  The Court held that the statute did "not, however, preempt any state rules that are fully *consistent* with federal requirements," *id.* (emphasis added), and that a state-law labeling requirement that is equivalent to, and fully consistent with, FIFRA's misbranding provisions, would also not be pre-empted by FIFRA's provision.  *Id.* at 447.  Here, there is nothing inconsistent

between state consumer fraud protections against false and misleading information and the FDCA's misbranding provisions. Thus, a state action relating to the label and federal consumer laws are consistent and preemption does not lie. If anything, the recognition in *Bates* of consistent claims not being preempted makes it clear that the claims here are not preempted.

In sum, the statute itself, the legislative history and its interpreting case law are clear that only claims that would be "inconsistent" with FDA rules, regulations and policy are preempted. That is, there is room for aggrieved parties to advance claims against manufacturers and distributors of products governed by FDA policy provided that the claims advanced are consistent with the applicable regulatory scheme.[6] Indeed, this is what the FDA meant when it acknowledged that "the only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements." 60 Fed. Reg. at 57,120. Since the claims advanced here are consistent with FDA regulations, they are not expressly preempted.

## C.    Plaintiffs' Claims Are Not Impliedly Preempted

Congress intended – and indeed expressly provided – that there be no implied preemption under the NELA. Although Defendants are correct that implied preemption may exist even where Congress has included an express preemption clause, the Court must "ascertain the intent of

---

[6] Further, that mere fact that the FDCA prohibits private actions to enforce standards of identity does not preclude state causes of action. *Medtronic*, 518 U.S. at 487. Where an allegedly pre-emptive federal regulation does not provide for a damages remedy, it is assumed that Congress intended preemption only in the most compelling circumstances. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 87-90 (1990); *Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984). Indeed, here when Congress was considering enacting the FDCA, it specifically rejected a proposal to include a private right of action for damages caused by faulty or unsafe products regulated under the FDCA because such a right already existed under state common law. *See, e.g.*, Hearings Before the Subcomm. of the Comm. on Commerce on S. 1944, 73rd Cong., 2d Sess. 400, 403 (1933); Robert S. Adler & Richard A. Mann, *Preemption and Medical Devices: The Courts Run Amok*, 59 MO. L. REV. 895,924 & n. 130 (1995) ("Congress rejected a provision in a draft, of the original FD&C Act providing a federal cause of action for damages because 'a common law right of action already exists'") (quoting legislative history).

Congress." *California Fed. Sav. & Loan Assn. v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). As set forth above, the intent of Congress cannot be clearer: it provided that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is *expressly* preempted under [this] section." NLEA, Pub. L. No. 101-535, 104 Stat. 2353, 2364 (1990), § 6(c)(1)(emphasis added). Under the plain meaning of this enactment, only what is expressly preempted would be preempted and no type of implied preemption "shall not be construed."

This enactment, which Defendants failed to mention should end the matter but even were this provision not part of the NLEA (and it is), where implied preemption is asserted, the basic inquiry is whether "state law undermines the intended purpose and 'natural effect' of ... the federal Act...." *Crosby v. Natl. Foreign Trade Council*, 530 U.S. 363, 373 (2000) (citation omitted). There is a strong presumption against preemption, particularly with regard to laws that affect the states' historic police powers over the health, safety and welfare of its residents, such as labeling of products for consumption. *See, e.g., Pharmaceutical Research and Mfrs. of America v. Walsh,* 538 U.S. 644, 666 (2003); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518 (1992).

Defendants' argument that the FDCA standards of identity, and specifically the standard for bottled water, are so comprehensive that allowing state law claims to go forward would impede Congress's objective (Def. Mem. at 19) cannot be squared with the fact that one of Congress's clear objectives in enacting the NLEA was to keep the door open to some state regulation: "[T]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by the [NLEA]." Beverages: Bottled Water, 60 Fed. Reg. 57,120. Rather than preclude all state regulation of product labeling, the NLEA clearly

was intended to prevent inconsistencies between state and federal requirements. *Vermont Pure Holdings, Ltd.*, 2006 WL 839486, *6 (D.C. Mass. 2006)(citing H. Rep. No. 101-538, 1990 U.S.C.C.A.N. 3336, 3337). The NELA makes clear that "if the State requirement does the same thing that Federal law does, even if the words are not exactly the same, then it is effectively the same requirement as the Federal requirement." 60 Fed. Reg. 57,120. Thus, clearly, the FDA left room for state regulations consistent with its rules and did not occupy the entire field. Further, the uniformity aspect was intended to "prevent or eliminate inconsistent State labeling requirements that significantly limit interstate commerce in bottled water." 58 Fed. Reg. at 395. The FDA did not intend to preempt more general causes of action guarding against deceptive or misleading acts contained in consumer protection statutes such as the ones at issue here, especially when those State statutes are entirely consistent with Federal requirements.

In short, the Congressional enactment does not and was not intended to so occupy the fields of unfair trade practice and product labeling that there is no room for state regulation. The Supreme Court has commanded that "courts should not lightly infer" that state law has been preempted by a federal statute. *See International Paper Co. v. Ouellette,* 479 U.S. 481, 490 (1987). Defendants' arguments rely mainly on one case easily differentiated from the case at hand and Defendants fail to make a compelling argument that Congress intended to bar state law causes of action when it enacted the NLEA. Accordingly, Defendants argument for implied preemption – like their argument for express preemption -- fails.[7]

---

[7] Defendants rely mainly on the unreported case of *Fraker v. KFC Corporation*, 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. 2007), to support its contention that allowing state law claims to go forward would disrupt a uniform labeling scheme and allow states to dictate requirements. In *Fraker*, the plaintiffs brought state law claims against KFC Corporation (formerly Kentucky Fried Chicken) alleging that the defendant misrepresented its product as healthy when it made such statements, among others, as "[w]e still take pride in doing things the Colonel's way, utilizing only the highest quality ingredients . . . and time tested cooking

13

III.    **PLAINTIFFS HAVE ADEQUATELY ALLEGED VIOLATIONS OF THE UNFAIR AND DECEPTIVE TRADE PRACTICE LAWS OF NEW YORK, CALIFORNIA, TEXAS AND TENNESSEE**

A.    **Plaintiffs Have Adequately Alleged Deceptive Conduct on the Part of Defendants**

Defendants misleadingly marketed *Aquafina* as coming from a mountain source, a very material fact considering the competition in the bottled water industry.  The source of bottled water is a significant determinant of the public's choice of which water to purchase.  Consumers purchase bottled water instead of drinking water from the tap for many reasons, primarily because of the common belief that bottled water is purer and cleaner than tap water.  *See generally* ¶¶ 1, 3-8.  In an effort to improve sales, many of *Aquafina*'s competitors emphasize that the source of their water is an actual mountain spring and many of these company's labels include pictures of mountains to advertise this fact.  ¶ 24.  Although *Aquafina* is now known not to come from a mountain source, Defendants sought to capitalize on the public's demand for mountain sourced water by depicting mountains with a rising sun in the background on its label and indicating that it is "Pure Water" that is "Bottled At The Source P.W.S.".  Defendants used these artifices to lure consumers into reasonably believing *Aquafina* water comes a pure source like natural springs or mountains, just like much of its competition.  ¶ 25.  By doing so, Defendants deceived Plaintiffs and, as a result, Plaintiffs have suffered monetary injury by purchasing *Aquafina* at artificially inflated prices deserving of only mountain spring water.  ¶¶ 3-8.

Under all the state consumer protections statutes asserted, a materially deceptive representation is actionable.  Indeed, such a claim is perhaps a core basis for these acts themselves.

---

methods."  *Fraker. v. KFC Corporation*, 2007 U.S. Dist. Lexis 32041, *4.  In finding the plaintiff's claims preempted, the court noted that the lower court called the defendant's statements "non-actionable puffery" and

Defendants' position that their marketing of *Aquafina* was not deceptive simply defies common sense. It would be akin to their claiming an artificial diamond sold in a misleading manner as a real diamond should not matter to consumers because both are glittery.

Thus, New York General Business Law Section ("GBL") 349 is New York's plenary consumer protection statute outlawing "[d]eceptive acts or practices in the conduct of any business, trade or commerce." GBL § 349. In the words of the Court of Appeals in its leading decision on the statute, Section 394 has a broad "consumer-protective purpose" and it exists, as Governor Rockefeller stated when he signed it into law, to ensure that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995) (quoting Mem. of Governor Rockefeller, 1970 N.Y. Legis. Ann. at 472).

A claim under Section 349 is not coextensive with common law fraud and a deceptive practice need not reach the level of common-law fraud to be actionable under the statute. *See, e.g., id.; Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Rather, determining whether an act or practice is deceptive under Section 349 is an objective inquiry – whether the practice was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. Thus, actual falsity of a representation need not be shown, *see Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003); a defendant's wrongful intent or scienter need not be proven, *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999); a plaintiff does not have to show that he or she relied upon any false statement to prevail, *id., Oswego*, 85 N.Y. at 26; and a material omission is as actionable as a false statement itself. *Stutman*, 95 N.Y. at 29; *accord Pelman v. McDonald's Corporation*, 396

---

"that no reasonable consumer would rely upon the statements." *Id.* at *8. As discussed below, the

F.3d 508, 511 (2d Cir. 2005).

Thus, the elements for a claim under Section 349 are, accordingly, just three: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act. *Stutman*, 95 N.Y.2d at 29. These elements are clearly met here – the activities in selling the water (1) were paradigmatically consumer-oriented; (2) the marketing was materially misleading to reasonable consumers (failing to disclose that the bottled water was nothing but refined tap water that had nothing to do with a mountain source – notwithstanding Defendants' depiction of mountains instead, of, say, a water faucet, and use of the words "Bottled At The Source P.W.S."; and (3) Plaintiffs are alleged to have been injured as result. ¶¶ 3-8.

Defendants spend several pages of their brief (Def. Mem. at 22-25) quibbling with the essential misleading nature of their labeling, arguing that because the label was FDA-approved it cannot have been misleading (a rehash of their preemption argument)[8] or that consumers do not care about the source of the water so long as it is pure (*see* pages 23-24). Common sense and practical knowledge show these assertions to be meritless – certainly, consumers care if they paid more for a product that is marketed as being from mountains instead of from common public water sources. This is no mere legal conclusion, as Defendants assert, but a simple statement of fact. To the extent that Defendants argue that, in actuality, consumers do not care (*see* Defs Mem. at 24), then that argument is attacking the materiality of the misrepresentations and that is, under Section 349

---

representations at issue do not constitute mere puffery.

    [8] While the FDA may not have believed that the actual source matters so long as the water is not an affirmative health risk – which is the FDA's primary function – unless there is preemption of the State law claims here, then the FDA's belief, which could hardly have been informed by the *Aquafina* label, proves nothing. What is at issue here is a matter of consumer expectations and beliefs, not protecting the public from dangerous products.

jurisprudence, recognized to be "a question of fact." *Sims v. First Consumers National Bank*, 303 A.D.2d 288, 289 (1st Dept. 2003).

While Defendants' cite many New York cases for generalized propositions, their position is undermined by the sole decision  that they try to relate to the facts in this case, *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608 (2d Dept. 2002).  There, Hewlett Packard was accused of violating Section 349 by failing to disclose that the ink cartridges sold with its printers were only half full.  But, there, unlike this case, there was nothing contained in the marketing or the boxes to indicate how much ink was contained in the included cartridges.  *Id.* at 609-10 ("The box containing the printers indicated only that ink cartridges were included with the purchase.  In addition, the defendant did not provide any description with respect to the amount of ink contained in the cartridge.  Nor was there any specific language regarding the size or description of the cartridges on the boxes or in the advertisements.").  Here, as Plaintiffs allege, Defendants intended to create an impression of mountain-sourced water by designing the label, and affirmatively disclosing a "Source" to impart the impression that it was mountain (and not tap) water.  Thus, the Complaint alleges what was lacking in *Andre Strishak* – an affirmative deceptive act or practice designed to mislead:  the words "Bottled At The Source: PWS" in conjunction with the mountain setting on the label and use of the term "Pure Water" conveyed specific misinformation as to the source and worth of the bottled water likely to deceive a reasonable customer.

Likewise, consistent with its remedial purpose, Plaintiffs' claims under the Tennessee Consumer Protection Act ("TCPA") also adequately allege to violate that statute.  The TCPA is broadly worded.  *Jenkins v. Brown*, 2007 WL 4372166, *8 (Tenn. Ct. App. Dec. 14, 2007).  As relevant here, the TCPA expressly states that representing that goods are of a particular standard or

17

grade, if they are of another, is an unfair or deceptive act or practice. Tenn. Code Ann. §47-18-104(b)(5). It also provides that causing likelihood of confusion or misunderstanding as to the source of goods is an unfair or deceptive act. *Id*. at § 47-18-104(b)(2). *See Proctor v. Chattanooga Orthopedic Group, P.C.*, 2008 WL 2399642 (Tenn. Ct. App. June 10, 2008) (Plaintiffs' allegation that defendant had misled them in order to keep business, and that defendants charged for a more expensive procedure than the one actually performed was sufficient to state a claim under the TCPA). *See also Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn. Ct. App. 1980) (Plaintiff could predicate her recovery under the TCPA against defendant based on evidence that defendant induced her to enter into a recording contract by means of fraudulent misrepresentations.).

Furthermore, Plaintiffs have adequately stated a claim based on Defendants violation of Texas' Deceptive Trade Practice Act, Tex. Bus. & Com. Code § 17.45 et seq. (2007) ("DTPA"). Like its New York and Tennessee analogs, the DTPA states that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful and are subject to redress under DTPA § 17.46. The DTPA further provides that the term false, misleading, deceptive acts or practices includes among other things "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" DTPA § 17.46(b)(2). Plaintiffs' allegations fall squarely within this prohibition. *See Sergeant Oil & Gas Co. v. National Maintenance & Repair*, 861 F. Supp. 1351, 1361 (S.D. Tex.1994) (denying summary judgment on claim that defendant misrepresented the water content of the fuel blend at issue and therefore violated DTPA § 17.46(b)(2)). A claim is therefore stated.[9]

---

[9] The Texas decisions on which Defendants rely involved markedly different allegations. For example, in *Seimens Medical Solutions USA, Inc. v. Sunrise Medical Tech., Inc*., 2005 U.S. Dist. LEXIS 43560 (N.D. Tex. Mar. 16, 2005), the defendant asserted that the plaintiff (which was a competitor of defendant) violated the DTPA by means of a counterclaim. Although the defendant alleged that the plaintiff caused "confusion or

As to California, and like the other States, the California Legal Remedies Act ("CLRA") states that misrepresenting the source of goods is an unfair method of competition and unfair or deceptive act or practice. Cal. Civ. Code §1770. Under the UCL, withholding a material fact likely to deceive a reasonable consumer is an unlawful, unfair, or fraudulent business act constituting unfair competition. Cal. Bus. & Prof. Code §17200 *as amended by* Prop. 64, §§3, 5, *approved* Nov. 2 2004, *eff.* Nov 3, 2004. *See Day v. AT & T Corp.*, 63 Cal.App.4th 325, 332-333 (1998) (finding that even a true statement "couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable" under §17200).

Defendants attempt to make much of In *McKinniss v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007). There, despite the plaintiff's claim that consumers were misled into believing "Froot Loops" contained real fruit, the claim was clearly and unmistakable controverted by the ingredients listed on the side panel of the box, that make clear that the cereal contained no actual fruit. *Id.* at *3, 11, 12-13. Although Defendants maintain that they disclosed the use of a "state-of-the-art Hydro-7 purification system," that disclosure does not indicate that Defendants are purifying *tap water* and no reasonable consumer would so conclude. At a minimum, this dispute presents a factual issue that cannot be resolved on the present motion.[10]

---

misunderstanding as to the source" of the MRI equipment at issue, the court found that the essence of the claim was that the plaintiff failed to provide the information necessary to enable defendant to fully install the MRI equipment, which was not alleged to have any relation to the "source" of the equipment. *Id.* at *15. Here, Plaintiff specifically pleads the relationship between the "source" and the harm suffered. *Kyger v. VeraVest Inv., Inc.*, 2004 WL 1043111 (N.D. Tex. May 6, 2004), as Defendants themselves concede, concerned statements considered to be mere "puffing" far afield from the representations at issue here. Def. Mem. at 26. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 2008 U.S. Dist. LEXIS 25641 (S.D. Tex. Mar. 31, 2008) did not even involve a claim under the DTPA.

[10] Defendants also cite *McKinniss v. Sunny Delight Beverages Co.*, 2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007), a case brought by the same plaintiff as in *Kellogg*, this time alleging that various beverages produced by defendants were misleadingly portrayed as containing substantial amounts of real fruit

19

### B.    Plaintiffs' UDAP Claims are Pled with the Requisite Particularity

Defendants maintain that Plaintiffs' claims under the TCPA, DTPA and CLRA are subject to F.R.Civ. Pro. 9(b).  Notably however, they make no such argument under New York law because the Second Circuit has squarely held that Rule 9(b) does not apply to Section 349 claims and only that Rule 8 does.  *Pelman*, 396 F.3d at 511-12.

Nonetheless, to the extent Rule 9(b) applies, Plaintiffs have complied with it.  "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify (1) the statements it claims were false or misleading, (2) give particulars as to the respect in which plaintiff contends the statements were fraudulent, (3) state when and where the statements were made, and (4) identify those responsible for the statements."  *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  Further, Rule 9(b) must be read in conjunction "with Rule 8(a), which calls for 'short and plain statement[s]' of claims for relief."  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  "On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader."  *Cosmas*, 886 F.2d at 11. "The particularity requirement of Rule 9(b) is designed to further three goals:  (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendants from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits."  *Id.*; *see also Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988); *DiVittorio*, 822 F.2d at 1247.  As "one commentary has observed, 'the key is to ensure that an attack on allegations of fraud or mistake, no matter what form it may take, is permitted only when

---

juice.  Like the label in *Kellogg*, and unlike the *Aquafina* label, the Sunny Delight label clearly undermined the plaintiffs' claim in that it listed water and high fructose corn syrup as the most prominent ingredients and identified that each of its products contains 2% or less of concentrated orange, tangerine, apple, lime, or grapefruit juice.  Lastly, Defendants rely on *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007).  The case concerned satellite phone service and the  statements found to constitute "puffery" were such statements as "crystal clear" and "cd clear" reception or "high quality" and "reliable" performance, and are not

absolutely necessary to effectuate the purposes and safeguard the integrity of the particularity requirement in Rule 9(b).'" *LaBoy v. Better Homes Depot, Inc.*, 2004 U.S. Dist. LEXIS 30091, *20-21 (E.D.N.Y. July 14, 2004).

Plaintiffs have sufficiently alleged all of the requisite circumstances constituting unfair and deceptive acts including the specific content of the false representations, the reason these representations were materially false and misleading, how these misrepresentations were conveyed to purchasers of *Aquafina* and the identities of the parties responsible for the misrepresentations. *See* ¶¶ 4-8; 34-38; 44-49. Defendants do not, nor can they, dispute the sufficiency of the details of the alleged deceptive conduct. Rather, they maintain that Plaintiffs have not alleged the specific date they were deceived or whether they were "exposed to the offensive conduct." Def. Mem. at 33. Each Plaintiff, however, alleges the period during which they purchased *Aquafina* water and that they were deceived into believing *Aquafina* was mountain spring water. The Complaint further alleges that each Plaintiff was shocked to learn the true source of *Aquafina* water. ¶¶3-8. These allegations satisfy the three-fold goals of Rule 9(b) recognized in this Circuit.

With regard to Tennessee law, Defendants point to *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999). In that case, however, the plaintiff alleged that statements in the national media and press were deceptive. Unlike such statements, which a plaintiff may never have seen, the deceptive conduct at issue here was boldly depicted on every *Aquafina* bottle purchased by the Plaintiffs. *McKee Foods Corp. v. Pitney Bowes, Inc.*, 2007 U.S. Dist. LEXIS 20630 (E.D. Tenn. March 22, 2007) was essentially a breach of contract case in which the plaintiff had not alleged *any* misrepresentation at all that could have supported a fraudulent inducement

---

of the type alleged to be deceptive her, that include deceptive statements as to the source of the water.

claim. Similarly, in *Agfa Photo U.S. Corp. v. Parkham*, 2007 U.S. Dist. LEXIS 40980, *20 (E.D. Tenn. June 5, 2007), the plaintiff brought breach of contract (and breach of warranty) claims but had provided "*no* specific details on who engaged in fraud with respect to its Lease Agreement, what those individuals said, when and where the conversations occurred, and how the alleged misrepresentations were fraudulent." (emphasis added).[11]

Defendants also rely on several Texas decisions, but, in each of those decisions, unlike the Complaint at issue here, the plaintiffs had failed to allege the most rudimentary elements of the fraud they were claiming. *See Ramirez v. American Home Products*, 2005 U.S. Dist. LEXIS 40577, *29 (S.D. Tex.. Sept. 16, 2005) ("Plaintiff d[id] not specify which Defendants are responsible for which violations of the Act"); *Seimens Medical Solutions USA, Inc. v. Sunrise Medical Tech., Inc.*, 2005 U.S. Dist. LEXIS 43560, *8-9 (failure to plead who made the alleged fraudulent statements); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824(N.D. Tex. 2001) (the complaint failed to allege, *inter alia*, who made the allegedly fraudulent representations, when they were made, to whom they were made, where and by what means they were made, whether they were oral or written, the exact content of the representations, or even why they were fraudulent); and *El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*, 1999 U.S. Dist. LEXIS 9339, *6 (N.D. Tex. May 27, 1999) (plaintiff failed to allege "the time, place, and contents of the false representations, and the identity of the person making the misrepresentation and what that person obtained thereby.").

With regard to California law, Defendants first rely on *Mazur v. Ebay Inc.*, 2008 U.S. Dist.

---

[11] Defendant's reliance on the non-precedential *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 960-61 6th Cir. 2005) is also misplaced. In *Parkway Assocs.*, plaintiffs claimed a bad faith refusal to pay an insurance claim constituted a violation of the TCPA. The plaintiffs, however, alleged only that the defendant insurance company violated the TCPA by failing to return telephone calls, forcing plaintiff into litigation, and placing the mortgage holder's name on the checks it submitted to plaintiff. The plaintiff failed to explain how it was misled or deceived by these acts. *Parkway Assocs.*, LLC, 129 Fed. Appx.

LEXIS 16561, *23 (N.D. Cal. Mar. 3, 2008), a case in which the plaintiff pled fraud with nothing

more than a recitation of its elements. Defendants next rely on *Stickrath v. Globalstar*, 527 F. Supp.

2d at 998, where the plaintiffs failed to provide any time frame during which allegedly false web site

statements appeared or identify any other specific advertisements alleged to be false. Lastly,

Defendants rely on *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988), a case in

which the court reviewed the sufficiency of RICO claims, and found that the allegations of the

complaint setting forth the predicate acts of fraud referred only to "many acts of mail fraud," "many

acts of wire fraud," and "many victims." *Id.* at 1393.

Accordingly, Plaintiffs have alleged with requisite particularity all required elements for

recover under the alleged California, Texas and Tennessee deceptive trade practice claims and none

of Defendants' authorities require a different result.[12]

### C.    Plaintiffs Have Adequately Alleged Injury

Defendants assert that Plaintiffs have failed to plead sufficient injury to claim a violation of

the relevant state consumer protection statutes. Defendants primarily argue that Plaintiffs cannot

merely assert a deception as constituting an injury itself. This is a true legal proposition but it is not

what Plaintiffs allege. Plaintiffs do not merely allege that the Defendants acted deceptively and that

the deception was injury. Rather, Defendants conveniently ignore the proximate and real economic

---

at 961.

    [12] Even if the court finds that Plaintiffs have not adequately plead fraud to satisfy Rule 9(b), an inadequate allegation of fraud does not mean a claim hasn't been stated. *Vess v. Ciba Geigy Corp USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). If an allegation of fraud fails to meet Rule 9(b)'s standard, then the court must disregard the allegation of fraud and then evaluate if a claim has been stated. *Id*. at 1105. For example, since fraud is not an essential element of a §17200 claim, *id*., the court can disregard the allegations of fraud and the remaining claims only need to satisfy Rule 8's lower pleading requirement. *Id*. Without any allegations of fraud, Plaintiffs Complaint clearly satisfies Rule 8's general rule of pleading. Plaintiffs have a statement of the court's jurisdiction, a statement of the claim showing they are entitled to relief, and a demand for said relief. Therefore, Plaintiffs have satisfied Rule 9(b)'s requirements insofar as they apply to the UDAP

injury that Plaintiffs assert: "[h]ad Defendants not engaged in the wrongful conduct described above, Plaintiffs and the members of the Class would not have . . . paid the same amount for *Aquafina*, and they have therefore proximately suffered injury in fact and ascertainable loss." ¶48.  Indeed, ignoring this allegation, Defendants go so far as to argue that Plaintiffs have not pled that "any alleged deception caused higher prices."  Def. Mem. at 32.  The deception is thus not the injury.  The injury is that Plaintiffs purchased *Aquafina* and/or overpaid for *Aquafina* as a result of Defendants' deceptive conduct.  If this is not a valid allegation of injury, then no monetary injury caused by a deceptive practice would ever be recoverable.

Not surprisingly, therefore, paragraph 48 qualifies as an allegation of injury under the "UDAP" (Uniform Deceptive Acts and Practices) statutes of each of the named Plaintiff's states – New York, California, Texas and Tennessee.

As to New York, an allegation that a plaintiff overpaid as a result of alleged misleading or deceptive conduct is sufficient to adequately plead injury under GBL Section 349.  In *Bildstein v.MasterCard Int'l Inc.*, 2005 U.S. Dist. LEXIS 10763, * 12-13 (S.D.N.Y. June 7, 2005) ("*Bildstein II*"), following the earlier *Bildstein* decision relied upon by Defendants, this Court thus upheld a GBL § 349 claim premised on undisclosed foreign currency transaction fees ("FCTF") beyond the foreign exchange rate where the injury alleged included "the amount the FCTF exceeded the prevailing exchange rate at the time of his transactions in Pesos."  Likewise, the Court in *Brandt v. CremaLita Mgmt.*, 2006 N.Y. Misc. LEXIS 4101, *17 n.4 (N.Y. Sup. Ct. June 9, 2006), recognized that  "The Court of Appeals has already held that . . . the inflated price of a product which would not have been purchased but for the deceptive practices may constitute injury for purposes of GBL § 349 . . . "

claims.

24

(citing *Small v. Lorillard Tobacco Co.*, 94 NY2d 43, 56 n. 5, 720 N.E.2d 892, 698 N.Y.S.2d 615 (1999)).[13]  This is precisely what Plaintiffs allege.[14]

Similarly, in Tennessee, any person who suffers an ascertainable loss of money, property, real, personal or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by [the TCPA] may bring an action to recover actual damages.  Tenn. Code Ann. §47-18-109(a)(a).  The requirement that consumers demonstrate that they have suffered an "ascertainable loss" under the Tennessee Consumer Protection Act is a common feature of state statutes banning unfair and deceptive trade practices.  *See State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346, *27-28 (Tenn. Ct. App. 2006); Jonathan Sheldon & Carolyn L. Carter, Unfair and Deceptive Acts and Practices, § 7.5.2.1, at 550 (5th Ed. 2001) (Unfair and Deceptive Acts and Practices).[15]

_____

[13] While the Court in *Small* also held that a claim for full reimbursement of the purchase price does not constitute injury for purposes of a GBL § 349 claim, Plaintiffs only seek to recover the amount of their overpayment pursuant to this claim.

[14] Several of the New York decisions on which Defendants rely make it clear that had such an injury allegation as Plaintiffs put forward in this case been alleged, then the claims would have been sustained.  *See Bildstein v. MasterCard Int'l Inc.*, 329 F.Supp. 2d 410, 416 (S.D.N.Y 2004) ("*Bildstein I*") (The Amended Complaint is bereft of any allegation that MasterCard charged an inflated FCTF. Such allegations would have been sufficient to state a claim under Section 349. *Small*, 94 N.Y.2d at 56 n.5.") (emphasis added); *Baron v. Pfizer, Inc.*, 840 N.Y.S. 2d 445, (3rd Dept. 2007) ("Without further allegations that, for example, the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health, plaintiff's claim "sets forth deception as both act and injury" and, thus, "contains no manifestation of either pecuniary or 'actual' harm").  Similarly, *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S. 2d 153, 154 (1st Dept. 2004) is hardly an analogous case as the plaintiff "never alleged, . . . that the cost of the beverages was inflated by the[ alleged] misrepresentations."

[15] In Tennessee, "[a]scertainable losses include losses that would not be cognizable injuries at common law." *State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346, *27-28 (citing *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1047 (Or. Ct. App. 2000)).  An ascertainable loss is a deprivation, detriment, or injury that is capable of being discovered, observed, or established. *State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346, *28 (citing *Service Road Corp. v. Quinn*, 698 A.3d 258, 262

As in New York, an ascertainable loss in Tennessee may include either an out-of-pocket loss or a loss in value. *State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346, *29 (citing *Thiedemann v. Mercedes-Benz USA, Inc.*, 872 A.2d at 792.) Accordingly, Tennessee courts have recognized that an ascertainable loss occurs in circumstances where a consumer receives less than what was promised. *State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346 , *29 (citing *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 819 (Conn. 1981); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1145 (N.J.Super.App.Div.2006); *In re W. Va. Rezulin Litig.*, 585 S.E.2d at 57)). Here, based on Defendants' misleading label, Plaintiffs were led to believe that they were purchasing mountain sourced water and not the processed tap water they received.[16]

Likewise, Plaintiffs have adequately stated a claim of lost money or property based on defendant's violation of California's UCL and CLRA laws. As Defendants themselves point out, claimants can only pursue a suit under the UCL if they have suffered injury in fact such as lost money or property directly resulting from the unfair competition. Def. Mem. at 30. Plaintiffs satisfy this requirement by pleading Defendants' wrongful and deceptive conduct directly resulted in their

---

(Conn. 1997); *In re Wiggins*, 273 B.R. 839, 856 (Bankr.D.Idaho 2001); *Thiedemann v. Mercedes-Benz USA, Inc.*, 872 A.2d 783, 793 (N.J. 2005); *Scott v. Western Int'l Surplus Sales, Inc.*, 517 P.2d 661, 663 (Or. 1973)). A loss is ascertainable if it is measurable, even though the precise amount of the loss is unknown. *State v. New Beginning Credit Ass'n., Inc.*, 2006 Tenn. App. LEXIS 346, *29 (citing *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981); *Rein v. Koons Ford, Inc.*, 567 A.2d 101, 106-07 (Md. 1989); *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 898 (N.J.Super.Ct. 2001); *Weigel v. Ron Tonkin Chevrolet, Inc.*, 690 P.2d 488, 494 (Or. 1984); *In re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 75 (W.Va.2003)).

[16] Defendants point to two Tennessee cases, neither of which have any bearing on the issues at hand. *Swift Freedom Aviation, LLC v. R.H. Aero*, 2005 U.S. Dist. LEXIS 37261, *49-50 (E.D. Tenn. Sept. 13, 2005) stands for the unremarkable point that a claim under the TCPA must include an allegation of injury. In *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667 (Tenn. Ct. App. 1994), the entry of a directed verdict in favor of the defendant was affirmed because the trial record evidenced that the plaintiff knew that the automobile she purchased was a "demo" with miles on it, that the car was warranted as if it were new, and that, as a result, the state's classification for title purposes of the car as used, was immaterial.

overpaying for *Aquafina* and thus suffering injury in fact and actual monetary loss. ¶ 48. Defendants' practice is a textbook violation of the CLRA in that Defendants misrepresented the source of their goods intending to result in a sale of these goods to the consumer at artificially high prices. Cal. Civ. Code §1770. As a direct result, Plaintiffs incurred monetary injury. ¶¶ 48-52. *Williams v. Gerber Prods. Co.* 523 F.3d 934 (9th Cir. 2008) (reversing the dismissal of a CLRA case where parents sued a manufacturer of children's fruit snacks because the packaging claimed it was "fruit juice snacks" with pictures of fruits when they are not made with real fruit juice and the main ingredients were corn syrup and sugar.) For the same reasons, Defendants have also violated the UCL, since a violation of state or federal law serves as a predicate for violations of the UCL. *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647 (1996) (stating that virtually any state, federal or local law can serve as the predicate for an action under §17200), *Walker v. Countrywide Home Loans, Inc.,* 98 Cal.App.4th 1158, 1169 (2002) (stating that the unfair competition law creates an independent action when a business practice violates some other law).

The nature of the bottled water industry distinguishes the present case from Defendants' use of *Chavez v Blue Sky Natural Bev. Co.,* 503 F.Supp.2d. 1370 (N.D. Cal. 2007). In *Chavez*, the plaintiff claimed that defendant misrepresented that their product was bottled or manufactured in New Mexico. The court ruled for the defendant holding that the representation of the product's origin had no value and thus plaintiffs suffered no damages.

In contrast, as discussed above, one of the main reasons that consumers purchase natural spring or mountain bottled water is the belief that it is superior to tap water. The label utilized by Defendants for *Aquafina* was designed for just this purpose – to mask the fact that the water's source is nothing more than tap water. In *Chavez*, the fact that the beverage was manufactured and bottled

27

in New Mexico had no bearing on the quality of the beverage.  This is why the court in *Chavez* concluded that the plaintiffs did not pay a "premium for Defendants' beverages because the drinks purportedly originated in Santa Fe, New Mexico." *Id* at 1373.  On the other hand, as alleged in the Complaint, water originating from sources such as mountains and springs carries a premium.  At the very least, Plaintiffs in this case purchased *Aquafina* because they believed it was not from the same public water or municipal sources as tap water.  ¶¶ 46-49.  Therefore, the court's reasoning in *Chavez* does not apply to this case.

### D.     To the Extent Required, the Complaint Pleads Reliance on Defendants' Misrepresentations

Defendants contend that reliance or causation is required under the California, Texas and Tennessee UDAP statutes and that Plaintiffs have failed to adequately plead these requirements. Plaintiffs, however, have sufficiently plead reliance and causation to state a claim under the each of these statutes in that Defendants' misleading information about the origin of its water directly led Plaintiffs to purchase *Aquafina* believing they were buying mountain spring water and caused them damage.  ¶¶3-7; 36-38, 46-49.

Specifically, Plaintiffs allege that:

- they purchased *Aquafina* believing that the true source of *Aquafina* was a mountain spring and/or not knowing the true source, and were shocked to learn the true source of the water. ¶¶ 3-8;

- "Defendants . . . *misled consumers* into believing that *Aquafina* water was similar to, as good as, and/or better than other rivals' water based upon, in part, the source of the water used in *Aquafina*" – mountain spring water. ¶¶ 36-37 (emphasis added);

28

- Defendants knew their misrepresentations as to source of *Aquafina* "would be considered important to consumers when they made decisions of whether to purchase Defendants' *Aquafina* water." ¶ 38; and

- Defendants' wrongful and deceptive conduct proximately caused the Plaintiffs to suffer ascertainable losses. ¶ 48.

Defendants ignore the inescapable fact that the Plaintiffs' could not have purchased *Aquafina* water without seeing their prominent misleading label and that Plaintiffs' mistaken belief as to the source of *Aquafina* water could only have come from seeing the label. Thus, these allegations are sufficient to plead reliance and causation under the California, Tennessee and Texas deceptive trade practice statutes. *See. e.g., Alford Chevrolet-Geo, Et Al. v. Jett Jones And Envo-Tech, Inc.,* 91 S.W.3d 396, 405 (Tex. Ct. App. 2002) (concluding that allegation that consumers paid a tax they did not owe because they were billed for the tax that was mischaracterized by the Dealers is a sufficient allegation of reliance under the DPTA).[17]

 With regard to California law and aside from raising an issue regarding a ballot proposition that constitutes unsettled law now before the California Supreme Court,[18] Defendants point to *Hall*

---

[17] As Plaintiffs have sufficiently complied with the reliance requirement of the DTPA, they need not also demonstrate that Defendants' conduct was unconscionable. *Compare* DTPA §17.50(a)(1) *with* §17.50(a)(3).

[18] Defendants contend that Proposition 64 specifically requires proof of personal reliance in UCL claims. Notwithstanding what Defendants would have the Court believe, this issue, has not been resolved by the California courts. While some courts, like *Cattie v Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), on which Defendants rely, follow this interpretation, other courts disagree. For example, in *Anunziato v eMachines* 402 F. Supp. 2d 1133 (C.D. Cal. 2005), laptop computer buyers brought a class action against a manufacturer for, among other things, violations of California's UCL. The defendant maintained that the plaintiffs failed to allege that they relied on or even saw the challenged statements by E-machines and that the plaintiffs' claims should necessarily fail. However, the court declined to interpret Proposition 64 as changing the reliance standard to require such proof. The court cited many public policy reasons for this decision including noting that a reliance requirement would end the opportunity for many consumers to sue under the UCL, thus going against the very purpose of the legislation. *Id.* at 1137-1138. In November 2006, the

*v. Time, Inc.*, 158 Cal. App. 4th 847 (4th App. Dist. 2008).  In *Hall*, the unfair competition at issue

involved a book sale program by which the defendant offered a free preview period but invoiced

consumers during the free preview period, thereby allegedly deceiving consumers into believing they

owed money during that period.  Hall, however, admittedly was not deceived into paying for the

book early and did not allege he did not want the book or that he was misled into keeping a book he

did not want.  *Id.* at 857.  Moreover, unlike Plaintiffs here, he did not allege that "the book was worth

less than what he paid for it."  *Id*. at 853.  In *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App.

4th 746, 755-56 (Cal. Ct. App. 2003), there was no issue as to whether the plaintiff had pled

causation.  Rather, the decision concerned the plaintiffs' motion for class certification, the denial of

which was affirmed because individual damage issues would predominate.

　　　　With regard to the Texas DTPA, Defendants rely on *Horton v. Cooper*, 2002 Tex. App.

LEXIS 4186 (Tex. Ct. App. June 12, 2002).  *Horton*, however, has no application here.  It concerned

a suit by an inmate who failed to allege any false or misleading acts by the only defendants that did

not have immunity from suit.  *Id.* at *9-10.  The other two Texas decisions that Defendants cite also

have no bearing here.  *See Weitzel v. Barnes*, 691 S.W.2d 598 (Tex. 1985) (the issue before the court

was whether a pre-1995 version of the current DTPA required reliance); *Celtic Life Ins Co. v. Coats*,

885 S.W.2d 96 (Tex. 1994) (same; in addition, in Justice Enoch's concurrence, he advocated a

---

California Supreme Court granted review of two cases that should resolve this issue, *Pfizer Inc. v. Superior Court*, 51 Cal.Rptr. 3d 707 (2006) and *In Re Tobacco II Cases*, 47 Cal.Rptr.3d 917 (2006), which have not yet been decided by the California Supreme Court.  Until then, Plaintiffs submit that *Anunziato* is the better-reasoned decision and urge that this Court follow it.  In any event, even if reliance is required by Proposition 64, Plaintiffs have adequately alleged reliance on Defendant's misrepresentation that produced a tangible injury.  Moreover, the present case and *Cattie* are not parallel.  In *Cattie,* unlike the present case, the plaintiff did not allege that the false advertising resulted in the sale of goods or had anything to do with the decision to purchase defendant's products.  *Id.* at 947.  Here, as noted above, Plaintiffs allege that they were misled by Defendant's misrepresentations into purchasing *Aquafina* water.  *See* ¶¶ 36-37.

"producing cause" standard that simply required the insured's reliance on the agent's statements to be "reasonable.").

Lastly, with regard to the Tennessee TCPA, Defendants rely on only one decision – *Harvey v. Ford Motor Credit Co.*, 1999 WL 486894, *2 (Tenn. Ct. App. July 13, 1999). The *Harvey* court expressly provided that "[t]he Tennessee Consumer Protection Act does not require reliance." 1999 WL 486894, as *2. Furthermore, the *Harvey* court noted that the TCPA is to be liberally construed to protect consumers. While the TCPA does not require reliance, plaintiffs are required to allege that the defendant's wrongful conduct proximately caused their injury. *Fleming v. Murphy*, 2007 WL 2050903 *8 (Tenn. Ct. App. 2007) (citing *White v. Early*, 211 S.W.3d 723, 741 (Tenn.Ct.App.2006); *Prudential Botts & Assocs. Realtors, Inc. v. R & E Props., LLC*, 2003 Tenn. App. LEXIS 454, *4-5, 2003 WL 21493792 (Tenn. Ct. App. June 25, 2003); *Milliken v. Crye-Leike Realtors*, 2001 Tenn.App. LEXIS 472, *21-24, 2001 WL 747638 (July 5, 2001); *Harvey*, 1999 Tenn. App. LEXIS 448, *4-5, 1999 WL 486894; *Stracener v. Swindle*, 1995 Tenn. App. LEXIS 471, *6, 1995 WL 414873 (July 14, 1995)). Here, Plaintiffs have done so by alleging that Defendants' wrongful conduct proximately caused their injuries and ascertainable losses, as discussed above. *See* ¶ 47.

### E.    Plaintiffs' Claims Are Not Exempted From The Tennessee Consumer Protection Act

Defendants argue that Plaintiffs' claims are outside the coverage of the TCPA because, they maintain, acts or transactions involving bottled water are exempted from the TCPA. Tenn. Code Ann. §47-18-111 provides:

> Exemptions.- The provisions of this chapter shall not apply to:
>
> 1(a)    Acts or transactions *required or specifically authorized* under the laws administered by or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United

31

States. (Emphasis added)....

    (e)    the burden of proving an exemption ... shall be upon person claiming the exemption.

(Emphasis added). Defendants' deceptive acts at issue here, however, are not regulated by the FDA.

This statutory exemption only precludes consumers from bringing an action based on practices that are "specifically authorized" under the a code or other regulatory statutes. Defendants, however, were neither required, nor specifically authorized, by the FDA to include a vignette of snow-capped mountains on its bottled water derived from the same sources as public tap water, or to use the word "pure" on its bottles of water. In fact, Defendants ignored specific warnings from the FDA that taking these actions may result in confusion and be misleading to the consumer. ¶¶ 33-34. Thus, it is clear that the FDA did not license Defendants to deceptively market *Aquafina* water. *See Skinner v. Steele*, 730 S.W.2d 335, 337 (Tenn. Ct. App. 1987). "The purpose of the exemption is to insure that a business in not subjected to a lawsuit under the [TCPA] when it does something required by law, or does something that would otherwise be a violation of the [TCPA], but which is allowed under other statutes or regulations." *Id.* "It is intended to avoid conflict between laws, not to exclude from the [TCPA's] coverage every activity that is authorized or regulated by another statute or agency." *Id.* "Virtually every activity is regulated to some degree." *Id.* Defendants' interpretation of the exemption would deprive consumers of a meaningful remedy in many situations. See *id.*[19]

Further, the TCPA itself indicates that the provisions of the FDCA and those of the TCPA are to be applied concurrently. Tenn Code Ann. §47-18-112 states: "The powers and remedies provided

---

[19] Defendants also cite *Naifeh v. Valley Forge Life Ins. Co.*, 2005 WL 1073637 *13 (Tenn. Ct. App. 2005), but *Naifeh* involved the practice of backdating insurance policies, a practice that is expressly permitted

in this chapter ... shall be cumulative and supplementary to all other powers and remedies otherwise provided by law.  The invocation of one power or remedy herein shall not be construed as excluding or prohibiting the use of any other available remedy."  Nothing in the FDCA indicates that it is intended to be the exclusive remedy for deceptive practices in the bottled water industry.  To the contrary, as more fully set forth above, the FDCA expressly indicates that it only preempts State laws that establish a requirement that is not identical to the Federal standard of identity.  Plaintiffs' claims are *not* that Defendants violated the TCPA by calling its water "purified water" or by failing to include the source of the water on the label.  Plaintiffs' claims are, instead, predicated on Defendants' conduct in going beyond what the FDA regulates.  Defendants' attempt to create a shield from liability under the TCPA must therefore fail.

## IV.    PLAINTIFFS HAVE ADEQUATELY ALLEGED CLAIMS FOR UNJUST ENRICHMENT

Despite Defendants' feigned confusion as to what State's laws are at issue here, Plaintiffs assert individual claims under the laws of the respective States in which they reside and will seek to certify, at the appropriate time, a class consisting of residents of all States based on the substantially similar principles of unjust enrichment nationwide.

To allege a claim for unjust enrichment in New York, a plaintiff must aver "(1) that the defendant was enriched; (2) that the enrichment was at *the plaintiff's expense*; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property *to the plaintiff*."  *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001) (emphases added).  Similarly, in California, "[i]n order to prove unjust enrichment, a plaintiff must establish three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) an appreciation

---

under the laws of Tennessee, unlike the acts at issue here.

or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Ball v. Johanns*, 2008 U.S. Dist. LEXIS 9609, *6 (E.D. Cal. Jan. 29, 2008); *see also Cal. Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992); *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal.App.4th 1262, 1278 (1999), *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500 (2007). "The emphasis is on the wrongdoer's enrichment, not the victim's loss. The elements are also virtually identical in Tennessee and Texas. *See Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)); *Argyle Independent School District Ex. Rel. Bd of Trustees v. Wolf*, 234 S.W. 3d 229 (Tex. App. Fort Worth  2007); *Best Buy v. Barrera*, 214 S.W. 3d 66 (Tex. App. Corpus Christi 2006), *Southwestern Bell Co. v. Marketing on Hold, Inc.*, 170 S.W. 3d 814 (Tex. App.. Corpus Christi 2005).[20]

The Complaint adequately pleads each of these elements. Plaintiffs allege that Defendants were enriched by the "retention of consumer purchase moneys received directly or indirectly" and that this enrichment was "unjust" in that it was obtained by means of the alleged deceptive conduct. ¶¶ 54-56.[21]

---

[20] Indeed, the elements of an unjust enrichment claim are identical throughout the United States in the material respects. *See, e.g., Blue Cross/Blue Shield of Ala. v. Wyeth Pharm., Inc.*, 2006 WL 1241019, *5 (Ala. Cir. Ct. Feb. 27, 2006) ("unjust enrichment is recognized in a virtually identical fashion in every jurisdiction in the United States"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are . . . . universally recognized causes of action that are materially the same throughout the United States.") (internal quotations omitted); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) ("[P]revailing case law holds that at least two of Singer's state claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States.").

[21] Defendants make a second attempt in their unjust enrichment argument to show, as a matter of law, that they have not engaged in any deceptive conduct that would justify an award of unjust enrichment. *See*

34

### A.    Plaintiffs Have a Sufficient Relationship with the Defendants

Defendants argue that Plaintiffs lack a sufficient relationship with them, akin to privity, to pursue a claim to recover Defendants' ill-gotten gains from passing off purified tap water as mountain spring water.  This claim, however, is founded on an equitable doctrine designed to provide relief in cases without contracts or other direct dealings, to prevent the ultimate wrongdoer from hiding behind agents, intermediaries, distributors, and third parties.  As stated in *Newbro v. Freed*, 409 F. Supp. 2d 386, 398 (S.D.N.Y. 2006), *aff'd*, 2007 U.S. App. LEXIS 4769 (2d Cir. Feb. 27, 2007):

> A claim of restitution based upon a theory of unjust enrichment is an equitable remedy. *See Dubbs v. Stribling & Assocs.*, 274 A.D.2d 32, 47, 712 N.Y.S.2d 19 (1st Dep't 2000). The powers of a court sitting in equity are "less hampered by technical difficulties than a court of law." *Cavin v. Gleason*, 105 N.Y. 256, 262-63, 11 N.E. 504 (1887). "Principles of equity mandate consideration of the totality of the circumstances." *Lake Minnewaska Mountain Houses, Inc. v. Rekis*, 259 A.D.2d 797, 799, 686 N.Y.S.2d 186 (3rd Dep't 1999) (concluding that issues of fact existed and thus denying summary judgment). "In doing so, courts will consider whether the benefit remained with the defendant, and whether defendant's conduct was 'tortious or fraudulent'." *Merrill Lynch, Pierce, Fenner & Smith v. Chipetine*, 221 A.D.2d 284, 286-86, 634 N.Y.S.2d 469 (1st Dep't 1995).

Consistent with this guiding principal, New York Court of Appeals has recently confirmed in *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (2007), that privity is not a

---

Def. Mem. at 43.  Each of the decisions on which they rely, however, are inapposite.  *McKinniss v. Sunny Delight Beverages Co.* is distinguished above.  *See* n.10., *supra*.  In *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448-49 (3d Dept. 2007), the plaintiff failed to adequately allege that she was deceived into using the drug Neurontin for an off-label use because she admittedly took the drug on the advice of her physician, but did not allege that her physician's decision to prescribe the drug was influenced in any way by defendant's alleged improper marketing of Neurontin for off-label use.  Lastly, in *L.J.B. Corp. v. City of N.Y.*, 581 N.Y.S.2d 798 (1st Dept. 1992), it does not even appear that an unjust enrichment claim was asserted.  Rather, the plaintiff was attempting to invoke the equitable powers of the court to void a provision of a real estate contract it had entered into with New York City which expressly afforded the City with the right to cancel the sale under the circumstances at issue.

requirement of an unjust enrichment claim.[22]  Rather, the New York Court of Appeals held that "[i]t is well settled that '[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered'' (citations omitted).  Focusing on this "essential inquiry," the First Department Appellate Division, in *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 778 N.Y.S.2d 147 (1st Dept. 2004), reversed the lower court's dismissal of a motion to dismiss an unjust enrichment claim by the purchasers of Microsoft software against Microsoft holding:

> the motion court erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs only indirectly bestowed a benefit upon Microsoft. Contrary to such reasoning, *plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment.*

8 A.D.3d at 40-41, 778 N.Y.S.2d at 149 (emphasis added); s*ee also Newbro v. Freed*, 2007 U.S. App. LEXIS 4769, *4-6 (rejecting appellant's argument that the appellee's unjust enrichment claim should have been dismissed because an intermediary acted between the parties).  *Dreieck Finanz Ag v. Sun*, 1989 U.S. Dist. LEXIS 9623, *13 (S.D.N.Y. Aug. 14, 1989) ("Nor is it necessary for plaintiff and defendant to have had direct dealings with one another.").  *See also Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) ("Freeman may bring a cause of action for unjust enrichment against the defendants even though Freeman did not purchase the items containing sorbates directly from the defendants."); *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966) ("It is well-established that want of privity is no obstacle to recovery under quasi-contract.");

---

[22] In that case, however, the dismissal of the unjust enrichment claim was affirmed because the plaintiffs were tire purchasers who were seeking unjust enrichment damages from the manufacturers of a chemical sold to the tire manufacturers for use in manufacturing the tires.  In marked contrast, here plaintiff seeks unjust enrichment damages from the manufacturer of the specific product they purchased.

*Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 132 Cal.Rptr.2d 220, 229 (Cal. App. 2003) (to

confer a benefit, the plaintiff need not pay the money directly to the defendant); *County of Solano v.*

*Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262  (1999) ("A person is enriched if he receives a

benefit at another's expense. . . .  For a benefit to be conferred, it is not essential that money be paid

directly to the recipient by the party seeking restitution").  *See also California Federal Bank  v.*

*Matreyek*, 8 Cal. App. 4th 125, 132 (1992); *McIntosh v. Wiley*, 2006 U.S. Dist. LEXIS 89589, *13

(S.D. Tex. Dec. 11, 2006) ("Plaintiff correctly quotes Texas caselaw for the notion that 'privity is

unnecessary since the cause of action involves a promise implied in law, as opposed to one arising by

[actual] consent' of the parties. [Dkt. No. 84-1, P 30 (quoting *Tri-State Chemicals, Inc. v. Western*

*Organics, Inc*., 83 S.W.3d 189, 199 n.7 (Tex. App.--Amarillo 2002, writ denied)]").

The decisions on which Defendants rely concerned far different relationships.  For example,

in *Reading Intl. Inc. v. Oaktree Capital Management LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003), the

owner, operator, and landlord of the Village East Cinema in Manhattan sought unjust enrichment

*from their competitors*, the Loews and Regal theater chains, for "leveraging their market power to

increase their own revenues at the expense of the Village East ... [thus obtaining] profits to which

they were not entitled."  *Id.* at 333.   In *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227 (S.D.N.Y.

2001), the unjust enrichment portion of the opinion concerned a motion for summary judgment by

defendant Ezra Chammah, who was a remote tippee of inside information that tender offer

negotiations were ongoing for Motel 6.  The plaintiffs were the holders of call options on Motel 6

securities.  Specifically, Chammah was alleged to have been tipped this inside information from

defendant Mark Shawzin who was tipped by his brother Gregg Shawzin who was tipped by Carl V.

Harris and his friend William Gomez.  Harris was in turn tipped by an executive vice-president of

Motel 6. *Id.* at 230. The only arguable connection the plaintiffs had with Chammah was that they traded Motel 6 securities at about the same time that Chammah did. *Id.* at 232-33. The plaintiffs therefore had absolutely no connection with Chammah.[23]

Defendants also rely on *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004), which did not even address the issue of the requisite relationship between the parties. Rather, the court determined that the plaintiff (an issuer of securities on an IPO that was underwritten by defendant) lacked standing to recover profits realized by defendant from its own customers because, in obtaining these profits, defendant was not enriched at the plaintiff's expense. *Id.* at 273. Here, there can be no question that Defendants have been unjustly enriched at Plaintiffs' expense in that Defendants received a portion of the inflated price paid by Plaintiffs for *Aquafina* bottled water.

None of the decisions from other relevant jurisdictions on this motion require the type of relationship Defendants urge this Court to apply here. For example, in *Busch v. Basic Organics, Inc.*, 2007 U.S. Dist. LEXIS 13272 (N.D. Tex. Feb. 27, 2007), the plaintiff (a body builder who consented to some use of his "before and after" pictures for the promotion of a diet shake) sued, among others, The Vitamin Shoppe, the retailer of the diet shake, for fraud, civil conspiracy, and unjust enrichment in connection with the use of his "before" and "after" photographs in the commercial promotion and marketing of the diet shake. The court dismissed the unjust enrichment claim (as well as all other claims against The Vitamin Shoppe) because the plaintiff not only had failed to allege <u>any</u> dealings with The Vitamin Shoppe, but also that he conferred any benefit on it.

---

[23] The same was true of the plaintiffs' relationship with Defendant Hirsh (tipped by defendant Jeffrey Sanker who was also tipped by Harris), against whom plaintiffs' unjust enrichment claim were also dismissed in *In re Motel 6 Sec. Litig.*, 1997 U.S. Dist. LEXIS 3909, * 21-22 (S.D.N.Y. April 2, 1997) and of the plaintiffs' relationship with the defendants in *Redtail Leasing, Inc. v. Bellezza*, 1997 U.S. Dist. LEXIS 14821,

*Id.* at \*22.  The court in no way held that <u>direct</u> dealings or that privity is required under Texas law in order to pursue an unjust enrichment claim.  Indeed,  as discussed above, none is required.

In a similar vein, Defendants, relying on decisions from California and Tennessee, also contend that Plaintiffs cannot recover for unjust enrichment because of the presence of intermediaries.  In *Freeman Indus. LLC v. Eastman Chem. Co*., 172 S.W.3d 512 (Tenn. 2005), while the court stated that a plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment, it recognized that so long as it would be futile to pursue a claim against the entity with which the plaintiff is in privity, the plaintiff can pursue those on which the plaintiff indirectly conferred a benefit.  *Id.* at 525.  Here, pursuing the supermarkets, convenience stores and other vendors from which the Tennessee plaintiffs purchased *Aquafina*  would be futile because the Tennessee have no viable common law claims against such sellers in that they have no known basis for believing that the sellers knew or should have know of Defendants' deceptive marketing and labeling.  *See In re Relafen Antitrust Litigation*, 221 F.R.D. 260, 284 (D. Mass. 2004).  Should discovery reveal a basis for such claims, the Tennessee plaintiffs would then proceed against the parties with whom they had privity.  Furthermore, while the exhaustion of remedies requirement may be a prerequisite to recovery, it is not a prerequisite to proceeding against a third party defendant. *See Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006.[24]

---

\* 23 (S.D.N.Y. Sept. 30, 1997).

[24] With regard to California law, Defendants rely on *Wayne v. BP Oil Supply Co.,* 2006 WL 766712 (Cal. Ct. App. Mar. 27, 2006) to assert that Plaintiffs' relationship with them is insufficient to support an unjust enrichment claim.  However, the circumstances in *Wayne* are distinguishable from the present case. *Wayne* relies on the reasoning of *City and County of San Francisco v. Philip Morris, Inc.* 957 F. Supp 1130 (N.D. Cal. 1997) where the court found that the plaintiff counties did not unjustly enrich tobacco companies by paying for the health treatment of smokers.  In *Phillip Morris*, the plaintiffs were never involved in the chain of commerce of cigarettes.  Likewise, the *Wayne* plaintiffs were buying a different product, gas, than the defendant produced, crude oil.  In that case, refineries were the entity creating the product that plaintiffs purchased, thus, plaintiffs did not confer a benefit on the defendant.  On the other hand, here there is a direct

39

### B.    Plaintiffs Need Not Allege an Independent Claim of Illegality

Defendants further argue that Plaintiffs' unjust enrichment claims should be dismissed if the Court dismisses Plaintiffs' other claims of illegality.  Illegality or wrongful conduct, however, is not an element of an unjust enrichment claim in New York or the other States presently at issue.  *See Newbro v. Freed*, 409 F. Supp. 2d at 398 ("Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched.  Innocent parties may frequently be unjustly enriched." (citation omitted); *Dreieck Finanz Ag v. Sun*, *supra*, 1989 U.S. Dist. LEXIS 9623, *13.  *See also Tucker v. Sierra Builders*, 180 S.W.3d 109, 115-16 (Tenn. Ct. App. 2005) ("The defendant's conduct need not be willful or even knowing...."); *McIntosh v. Wiley*, 2006 U.S. Dist. LEXIS 89589, *14 ("the Texas Supreme Court has concluded that '[t]he principal function of quasi-contract is generally said to be that of prevention of unjust enrichment.'"; not illegal conduct).

In California, "[a]n individual may be required to make restitution if he is unjustly enriched at the expense of another  . . . A person is enriched if he receives a benefit at another's expense. . . The term "benefit" "denotes any form of advantage" and is not limited to illegal conduct.  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (citing *Rest.,Restitution*, § 1, p. 12).  *See also Accuimage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 947, 958 (N.D. Cal. 2003); *Lectrodryer v. SeoulBank*, Cal. App. 4th 723, 726 (2007).  Unjust enrichment "is based upon equitable principles." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657 (1992); *Hirsh v. Bank of Am*., 107 Cal. App. 4th 708 (2003).

All of the decisions on which Defendants rely concern the circumstances where the plaintiff's

---

link in the chain of commerce between the plaintiffs and defendant.  Consumers are suing for false representations of the product the manufacturer produces.  The product they are suing over is the exact product that defendant produces since consumers buy *Aquafina* unchanged after it leaves the defendants' facility.  Most of the money spent on their purchase goes back to the defendant manufacturer.  As a result, defendants were

unjust enrichment claim *was dependent* on the unlawfulness of practices at issue.  Here, Plaintiffs'

unjust enrichment claim does not hinge on any of Plaintiffs' other claims.  Plaintiffs do not

incorporate by reference any of Plaintiffs' other claims.  While Plaintiff does rely on the same

"omissions and mislabeling" by Defendants that are a predicate for their other claims, ¶ 55, that does

not render the unjust enrichment claim *dependent* on the viability of those other claims.

Furthermore, even if this were not the case, Defendants' argument still has no merit as Plaintiff's

deceptive trade practice claims are adequately pled, for the reasons discussed above.

### C.    Plaintiffs Need Not, at This Stage of the Proceedings, Establish That They Have No Adequate Remedy at Law

Lastly, Defendants argue that Plaintiffs' unjust enrichment claims must be dismissed because

Plaintiffs do not allege they have no adequate remedy at law.  Plaintiffs, however, may maintain their

unjust enrichment claim as an alternative to their other claims.  The law is clear that, when recovery

under tort or contract theory is disputed, plaintiffs may plead legal and equitable claims in the

alternative.  *See*, *e.g.*, Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a

claim . . . alternately or hypothetically . . . . A party may also state as many separate claims or

defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime

grounds."); *Consol. Risk Services, Inc.. v. Automobile Dealers WC Self Insurance Trust*, 2007 U.S.

Dist. LEXIS 22097, *23 (N.D.N.Y. March 27, 2007) ("Rule 8(a) of the Federal Rules of Civil

Procedure allows plaintiffs to plead alternative claims. Courts have denied motions to dismiss unjust

enrichment claims as premature for this reason.") (citations omitted).[25]

---

and continue to be directly enriched by Plaintiff's purchase of *Aquafina*, and *Wayne* does not control.

[25] *See also Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 841-42 (S.D. Ohio 2003) ("[Plaintiff] is entitled to assert a claim of unjust enrichment as an alternative theory of relief should her pursuit of legal remedies fail.").

## V. DEFENDANTS' LAST DITCH CHALLENGES TO PLAINTIFFS' CLAIMS FAIL

Finally, Defendants assert that the words "substantially similar statutes in effect in the other States and the District of Columbia" in paragraph 51 for the Unfair and Deceptive Acts and Practices claims are not pled with sufficient particularity and that until Plaintiffs' list all the states (by name) for which putative class members are from, Defendants are not able to respond to the Complaint. Since the putative class, at least for pleading purposes, is nationwide, surely the Defendants know the fifty states of the United States and the District of Columbia so this last argument is rather formalistic. The clause used in paragraph 51 is a commonplace, almost rote, clause and is practically required perforce in a class action complaint encompassing the claims of putative plaintiffs in a federal MDL proceeding arising out of nationwide conduct. Indeed, the exact same clause was upheld in this Court against a motion to dismiss in *In re Grand Theft Auto*, 2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. July 30, 2008), against a standing challenge. Since there is no doubt that the named Plaintiffs have standing to assert violations of their own states' laws, the issue here as to what laws are (or not) similar is one for the class certification stage.[26] In the meantime, should the Defendants wish greater specificity, the more appropriate procedural approach would have been to seek a bill of particulars (though the response is obvious to all – the fifty States and the District of Columbia).[27]

---

[26] Among the issues that will have to be addressed at the class certification stage is the decision in *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008), in which the court rejected class actions under the TCPA.

[27] Alternatively, of course, should the Court disagree, Plaintiffs respectfully would seek leave to amend to add the laundry list of State statutes for the first cause of action and to add all the states to the second cause of action.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: August 8, 2008

                                                    _____/s/___Seth R. Lesser_____
                                                    Jeffrey A. Klafter (JK 0953)
      Seth R. Lesser (SR 5560)
      KLAFTER OLSEN & LESSER LLP
      1311 Mamaroneck Avenue, Suite 220
      White Plains, New York 10605
      (914) 997-5656
      www.klafterolsen.com

      *Lead and Liaison Counsel for Plaintiffs*

      Hunter J. Shkolnik (HS 4854)
      RHEINGOLD, VALET, RHEINGOLD,
      SHKOLNIK & McCARTNEY LLP
      113 East 37th Street
      New York, New York 10016
      (212) 684-1880
      http://www.rheingoldlaw.com

      Richard J. Arsenault
      NEBLETT, BEARD & ARSENAULT
      2220 Bonaventure Court
      Alexandria, Louisana 71301
      (318) 487-9874

      Ricky E. Wilkins
      Sharon Harless Loy
      THE LAW OFFICES OF RICKY E. WILKINS
      119 S. Main Street
      Suite 500, Pembroke Square Building
      Memphis, Tennessee 38103
      (901) 322-4463

      Gina C. Higgins
      STOTTS, HIGGINS & JOHNSON
      1470 Monroe Ave.
      Memphis, Tennessee 38104

(901) 276-2500

Robert L.J. Spence, Jr.
SPENCEWALK, P.L.L.C.
One Commerce Square
Suite 2200
Memphis, Tennessee 38103
(901) 312-9160

Jonathan H. Cox
402 Main St., 3 South
Houston, Texas  77002
(713) 752-2300

C. Brooks Cutter
KERSHAW, CUTTER & RATINOFF, LLP
980 9th Street, 19th Floor
Sacramento, California 95814
(916) 448-9800

Nicholas J. Drakulich
JENNINGS & DRAKULICH, LLP
2002 Jimmy Durante Blvd., Suite 400
Del Mar, California 92014
(858) 755-5887

*Counsel for Plaintiffs*

44